369 A.2d 483
**APEX FINANCIAL CORP., a Pennsylvania Corporation, Appellant,**

v.

**William J. DECKER et al., Appellees.**

Superior Court of Pennsylvania.

Argued June 16, 1975.

Decided Nov. 22, 1976.

440

Donald L. Toner, Doylestown, for appellant.

Allan B. Goodman, Bethlehem, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

WATKINS, President Judge:

This case comes to us as a result of an appeal taken by Apex Financial Corporation from an order of the Court of Common Pleas of Northampton County, Civil Division, which refused to change a sheriff's schedule of distribution of the proceeds of a sheriff's sale.

Apex had instituted an action in mortgage foreclosure against William J. Decker and Judith A. Decker, his wife, in August of 1973, had obtained judgment, and then proceeded to execution upon a premises located at 3816 Patterson Drive, Bethlehem, Pennsylvania. The sheriff's sale was held on February 21, 1974. At the sale Apex's attorney was the successful bidder purchasing the premises for the sum of $6,678.48. The sheriff's schedule of distribution of the proceeds of sale was as follows:

| | | |
|---|---|---|
| 1. | Sheriff's costs, taxes, etc. | $2,257.36 |
| 2. | Bethlehem Consumer Discount (BAC) Company, Inc., in satisfaction of its judgment note | 3,999.18 |
| 3. | Balance of proceeds to Apex | 421.94 |
| | Total | $6,678.48 |

Apex filed exceptions to the proposed distribution to Bethlehem Consumer Discount Company ("BAC"), contending that its mortgage lien had priority over BAC's judgment lien because the manager of BAC had prom-

ised to subordinate BAC's lien to its lien in a letter sent to Apex on September 7, 1972. There is no question about the fact that BAC's lien was prior to the lien of Apex. Therefore the only issue is whether the letter sent to Apex by BAC's manager on September 7, 1972 was sufficient to subordinate BAC's lien to Apex'.

The letter in question was signed by BAC's manager, Robert E. Luhrs, was addressed to Apex, and provided as follows:

"To whom it may concern:

"Please accept this letter as our agreement to subordinate judgment on Mr. William Decker of Bethlehem, Pennsylvania, to your judgment.

"Please have your attornies [sic] draw up the necessary subordination agreement and mail to this office for signature."

Apex then insured its mortgage with the Chelsea Title and Abstract Company of Pennsylvania, Inc., which removed the BAC judgment as an exception upon presentation to it by Apex of the above letter of September 7, 1972. On September 6, 1973 Chelsea sent BAC a subordination agreement which BAC refused to execute. Apex claims that the BAC lien should have been subordinated to its lien because of the September 7, 1972 letter to Apex. To support its position Apex contends that Luhrs, BAC's manager, was clothed with the authority to make such an agreement, that Apex relied to its detriment on the September 7, 1972 letter from Luhrs to Apex, and that therefore BAC should be bound by Luhrs' agreement to subordinate the BAC lien. BAC contends that Luhrs did not have the authority to subordinate BAC's liens, that the agreement was not enforceable because it was gratuitous since BAC received nothing in return for a subordination of its lien and that Apex has suffered no detriment as a result of the letter anyhow.

 The liability of a principal to third parties for the act of an agent must rest on (1) express authority, or that which is directly granted; (2) implied authority, to do all that is proper, usual and necessary to the exercise of the authority actually granted; (3) apparent authority, as where the principal holds one out as agent by words or conduct, and (4) agency by estoppel. *Passarelli v. Shields*, 191 Pa.Super. 194, 156 A.2d 343 (1959). The burden of establishing an agency relationship rests with the party asserting it. *Girard Trust Bank v. Sweeney*, 426 Pa. 324, 231 A.2d 407 (1967). The evidence adduced at the hearing below failed to establish any express or implied authority on the part of Luhrs to subordinate BAC's lien. Therefore the sole issue for determination is whether BAC had clothed Luhrs with the apparent authority or authority by estoppel by designating him as "manager" of one of its offices.

██ "Apparent authority" is the power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted to the agent. *Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 246 A.2d 407 (1968). The test for such is whether a man of ordinary prudence, diligence and discretion would have a right to believe and would actually believe that the agent possessed the authority he purported to exercise. *Murphy v. Beverly Hills Realty Corporation*, 98 Pa.Super. 183 (1930). The only evidence tending to indicate the authority of Luhrs was that he was a "manager". No testimony was adduced indicating any prior dealings between the parties wherein Luhrs exercised the power to subordinate a lien without consideration or exercised the power to do any other act of a similar nature. In fact Luhrs' authority was limited to the making and collecting of loans. The subordination of a lien is a somewhat extraordinary act and is even more so when it is done without consideration. Therefore Apex should have been placed on notice

as to the extent of a "manager's" authority to perform such an act. It must also be noted that the Luhrs' letter of September 7, 1972 was not acted upon by BAC or anyone else until September 6, 1973 when Chelsea sent BAC the subordination agreement to be executed. It would be unreasonable indeed to hold that Luhrs' unauthorized promise to subordinate BAC's lien without consideration should bind BAC for a full year in the absence of any other relevant factors.

The cases cited by Apex wherein courts have found that a manager's actions bound his principal are not controlling in this situation because in each of those cases certain facts were adduced which would provide a person with a reasonable basis for assuming the authority of the manager to do the act. In *East Girard Savings and Loan Association v. Houlihan*, 373 Pa. 578, 97 A.2d 23 (1953), the manager had agreed to spread additional collateral provided by the defendant to secure his loans over several of his accounts. However, in that case the manager's name had appeared on the lending institution's letterhead and the defendant had received several letters from the lending institution threatening foreclosure, one of which suggested that he call and see the manager personally. The court held that those additional factors clothed the manager with the apparent authority to do what he did. In our case no such additional factors were shown.

■ Since Luhrs, as manager, was not clothed with the apparent authority to execute a gratuitous subordination of a lien merely by his position, we hold that the court below was correct in its decision refusing to alter the sheriff's schedule of distribution.

■■ Apex' other contention is that the principle of authority by estoppel should be applied to the instant situation. Authority by estoppel occurs when a principal, by his culpable negligence, permits an agent to exercise

powers not granted to him, even though the principal did not know or have notice of the agent's conduct. In the event that a principal fails to take reasonable steps to safeguard himself and to safeguard third persons dealing with an agent from harm caused by the agent, then the principal may be estopped from denying the authority of the agent. *Reifsnyder v. Dougherty*, 301 Pa. 328, 152 A. 98 (1930). In our case the record fails to indicate that the officers of BAC had any knowledge or notice of Luhrs' September 7, 1972 letter until September 6, 1973. At that time the president of BAC immediately notified its attorney. Since Apex failed to present any evidence of negligence on BAC's part, no agency by estoppel occurred. For this reason and because no agency by apparent authority existed, the decision of the court below is affirmed.

HOFFMAN, J., files a concurring opinion.

SPAETH, J., files a dissenting opinion.

HOFFMAN, Judge, concurring:

The letter sent to Apex by BAC's manager, Luhrs, does not constitute a contract, but is an invitation to enter into a contract. The letter clearly stated in its second paragraph, "Please have your attornies [sic] draw up the necessary subordination agreement and mail to this office for signature." Thus, what Luhrs contemplated was that Apex attorneys would prepare a subordination agreement in proper form and would send it to BAC attorneys for approval. He did not enter into a binding subordination agreement himself; he merely entered into negotiations for such an agreement.

Because there was no valid subordination agreement between BAC and Apex, it is not necessary to reach the issue of the manager's apparent authority. The sheriff's schedule of distribution of the proceeds is correct and the lower court's order should be affirmed.

446

SPAETH, Judge, dissenting:

This case may be regarded as a somewhat unedifying battle between two creditors for priority to the proceeds of a foreclosue on the real estate of common debtors. It seems to me, however, more important than that.

The determinative issue is the legal effect of a letter sent to appellant by appellee's manager. The letter purports to be a subordination of what is stipulated to be appellee's prior lien position. If the letter was a proper subordination, appellant has priority. The majority holds that the letter was not a proper subordination because it was signed only by appellee's manager, who, it is said, did not have authority to bind appellee to such a subordination:

> Since Luhrs, as manager, was not clothed with the apparent authority to execute a *gratuitous subordination* of a lien merely by his position, we hold that the court below was correct in its decision refusing to alter the sheriff's schedule of distribution. Majority opinion at p. 444 (emphasis added).

In my opinion, this holding is unfortunate. It fails to recognize business realities, with the result that one party is permitted to repudiate a transaction by which it should have been bound. I should prefer to see us encourage honorable business dealings, rather than discourage them.

When the subordination letter was written, the debtors were already in default to appellee. Appellee was not optimistic about the prospects of payment and was considering initiating a foreclosure action itself. (N.T. 12a) We may take judicial notice of the fact that as a matter of business practice a lender does not like to foreclose: the procedure is expensive and time consuming; especially as regards residential property, it creates a bad public image; and, perhaps most to the point, it may not generate enough proceeds to cover the loan, since property of-

ten sells for less at a forced sale than under normal market conditions. Accordingly, appellee might well have welcomed appellant's suggestion that it would lend appellee's debtors money if appelle would relinquish its lien priority. With new money the debtors might be able to "turn the corner." When these factors are taken into account, the majority's characterization of the letter as a "gratuitous subordination" impresses me as quite unrealistic. To a finance company in appellee's position, it must rather have seemed an attractive alternative to foreclosure.

Nor can I agree with the majority's statement that "[appellee's] manager . . . was not clothed with the apparent authority" to sign the subordination letter. Indeed, it is at least arguable that the manager had express authority. Appellee's president testified that the manager's authority extended to "making loans and collecting them." (N.T. 11a) The authority to "collect [ ]" a loan would seem to include the authority to decide how to collect it, and as just discussed, the manager's letter represented a choice of one procedure (subordination) rather than another (foreclosure) as being the more likely to lead to collection of the loan. Passing this point, however, when the manager's letter is viewed in the context of the business situation confronting the parties, it is evident that the manager at least had apparent authority.

No doubt for some a subordination is a "somewhat extraordinary act." Majority opinion at p. 443. That can hardly be said, however, as regards the manager of a finance company such as appellee. It is rather exactly the sort of function one would expect him to perform.

When we speak of apparent authority, we mean the way the manager's authority was perceived by others. The decisive evidence on this point is the evidence that the manager's letter was treated as a subordination by the title company insuring appellant's title in the debt-

ors' property. A title company deals with matters of subordination on a daily basis. Its acceptance of the letter is persuasive proof that "a man of ordinary prudence, diligence, and discretion would have a right to believe and would actually believe that the agent possessed the authority he purported to exercise." *Murphy v. Beverly Hills Realty Corporation*, 98 Pa.Super. 183 (1930).

I would reverse.