439 A.2d 1214

Susan SAUERS, individually and on behalf of all persons similarly situated, Appellant,

v.

PANCOAST PERSONNEL, INC., Snelling and Snelling, Inc., R. E. Lowe and Associated, Inc. t/d/b/a Shilowe Personnel Systems, George T. Moray, t/d/b/a Career Personnel Service, Interstate Business Systems, Inc. and June Franell, t/d/b/a Franell Personnel Consultants.

Elva M. NOVELLI, William Poloka, Harald Brinke, Michael Halyko and Vincent McStay, individually and on behalf of all persons similarly situated, Appellants,

v.

PANCOAST PERSONNEL, INC., Snelling and Snelling, Inc., R. E. Lowe and Associated, Inc., t/d/b/a Shilowe Personnel Systems, George T. Moray, t/d/b/a Career Personnel Service, Interstate Business Systems, Inc., and June Franell, t/d/b/a Franell Personnel Consultants.

Superior Court of Pennsylvania.

Argued Feb. 9, 1981.

Filed Jan. 8, 1982.

Petition for Allowance Denied May 26, 1982.

Joseph M. Zoffer, Pittsburgh, for appellants.

Jon G. Hogue, Pittsburgh, for appellees.

Before BROSKY, DiSALLE and SHERTZ, JJ.

DiSALLE, Judge:

On January 28, 1976, appellants brought a class action suit against appellees-employment agencies with whom appellants had contracted for the purpose of finding employment. This appeal arises from a lower court order dismissing the complaint as to the defendant Snelling and Snelling, Inc. (hereinafter Snelling), based upon its conclusion that Snelling had not been served with the complaint.

On February 3, 1976, service of the complaint was made upon a person in charge of the office of a Snelling licensee in Monroeville, Pennsylvania. Appellants contend that this constituted proper service on Snelling. Appellants argue that the licensee was an agent of Snelling with actual authority to accept service on Snelling's behalf. As authority for this contention, appellants cite Pa.R.C.P. 2180(a)(2), which authorizes service of process upon a corporation by having the sheriff hand a certified copy of the complaint "to an agent or person for the time being in charge of, and only at, any office or usual place of business of the corporation or similar entity. . . ." Alternatively, appellants contend that the licensee was vested with apparent authority to act as Snelling's agent. Snelling denies any agency with the Monroeville licensee.

The lower court found that Snelling first received notice of this suit on January 19, 1979, when the attorney who initially had entered his appearance for all of the defendants mailed to Snelling a copy of a Petition to Withdraw Appearance as its counsel because of its failure to participate in the suit or to remit its share of legal fees. On May 25, 1979, Snelling, through other counsel, filed a Special Petition to Intervene, which contained Preliminary Objections raising the issue of improper service. Following discovery and a hearing, the lower court sustained Snelling's Preliminary Objections.

■ It is clear from a reading of the license contract that the licensee was without actual authority to act as Snelling's agent. Paragraph 9 of the contract states:

This agreement is one of license only and Licensee is not hereunder authorized to act for or on behalf of SNELLING in any matter whatsoever.... In granting this license SNELLING does not authorize or empower Licensee to use SNELLING'S name in any capacity other than is provided herein, nor to sign SNELLING'S name to any contracts, documents, bills, notes, checks, drafts, leases, bonds, mortgages, bills of sale or any other instrument in writing, or to hold itself out as a general or special agent, officer, director or partner of SNELLING. Licensee shall represent that it is doing business as a licensee under the trade name and style of "Snelling and Snelling" or as a licensed member of the SNELLING System, ....

■ The argument that the licensee had apparent authority to receive service on Snelling's behalf must also be rejected. Apparent authority exists when the principal has led a third party into believing that the licensee was the principal's agent. *Apex Financial Corp. v. Decker*, 245 Pa. Super. 439, 369 A.2d 483 (1976). Restatement (Second) of Agency § 8 (1958). This did not occur in the instant case. Paragraph 21 of the licensee's answer to appellants' complaint states, in pertinent part:

It is admitted that Snelling and Snelling is an employment agency engaged in the business specifically defined in paragraph 2 of the complaint, but it is denied that this defendant has offices at 607 Washington Road, Pittsburgh, Allegheny County, Pennsylvania 15228. On the contrary, the franchise Snelling and Snelling Agency specifically dealing with plaintiff Elva M. Novelli was licensed as Pittsburgh Personnel Services t/a Snelling and Snelling, located at 7651 Oliver Plaza, Pittsburgh, Pennsylvania 15222, *and that all matters relating to this plaintiff were confined to this separate franchise entity, and legal liability, if any, would rest in said licensee only.* (Emphasis added.)

■ Appellants, therefore, had notice that service had been made upon a licensee of Snelling, and not on Snelling.[1] *Cf. Delaware Valley Surgical Supply Co. v. Geriatric and Medical Centers,* 450 Pa. 239, 299 A.2d 237 (1973) (service upon the parent corporation held not to constitute service upon wholly owned subsidiary corporations); *Myers v. Mooney Aircraft, Inc.,* 429 Pa. 177, 240 A.2d 505 (1967) (service upon the distributor-independent contractee held not to constitute service upon the manufacturer-contractor); *Botwinick v. Credit Exchange,* 419 Pa. 65, 213 A.2d 349 (1965) (service upon a wholly owned subsidiary corporation held not to constitute service upon the parent corporation).[2]

■ Appellants also argue that Snelling has waived the defense of improper service by failing to raise the same in the original Preliminary Objections which were filed when their suit was first instituted. This is obviously without merit. A party cannot be held to pleading requirements when it has not received notice of the filing of the suit in the first instance.

Order affirmed.

SHERTZ, J., files a dissenting opinion.

Decision was rendered prior to DiSALLE and SHERTZ, JJ., leaving the bench of the Superior Court.

. SHERTZ, Judge:

In considering whether the trial court properly sustained preliminary objections raising a question of jurisdiction, our scope of review is limited to whether the jurisdictional issue was properly decided. *Wechsler v. Newman,* 256 Pa.Super.Ct. 81, 87, 389 A.2d 611, 614 (1978). Because I believe

1. In addition, the licensee, in compliance with Pennsylvania law, had placed on public file with the Department of Labor and Industry a document that identified licensee as an independent entity, separate and distinct from Snelling as licensor.

2. Neither can appellants rely upon the principle of estoppel because they have failed to prove that Snelling, by culpable negligence, permitted licensee to exercise powers not granted it. *Apex Financial Corp., supra.*

the court below had jurisdiction over appellee, Snelling and Snelling, Inc. ("Snelling"), I would hold that the trial court erred in sustaining Snelling's preliminary objections and dismissing it as a party defendant. Accordingly, I respectfully dissent from the conclusion reached by the majority.

Unquestionably, Snelling was entitled to notice of the action against it. Notice is a basic requirement of due process. *Pennsylvania Coal Mining Association v. Insurance Department*, 471 Pa. 437, 452, 370 A.2d 685, 692 (1977). Moreover, to be adequate, notice must be

> reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such a nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In the instant case, the method by which appellants effected service of process upon Snelling comported both with the requirements of due process and with the mandates of Pa.R.Civ.P. 2180(a)(2).[1]

After reviewing the record, I am in agreement with the majority's conclusion that Pittsburgh Personnel Services, trading as Snelling and Snelling ("PPS"), the Snelling licensee, was without express authority to act as Snelling's agent. I part company with the majority, however, with respect to its conclusion that apparent authority was not present. Ap-

---

1. Pa.R.Civ.P. Rule 2180(a)(2) reads:
   (a) Service of process within the county in which the action was commenced shall be made upon a corporation or similar entity by the sheriff of that county by handing an attested or certified copy of the process, as prescribed by Rule 1008,
   *   *   *   *   *   *
   (2) to an agent or person for the time being in charge of, and only at, any office or usual place of business of the corporation or similar entity ....

parent authority is the "power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted." *Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 375, 246 A.2d 407, 410 (1968). *See also Apex Financial Corp. v. Decker*, 245 Pa.Super.Ct. 439, 443, 369 A.2d 483 (1976). In determining the existence of apparent authority, the test is whether a person of ordinary prudence, diligence and discretion would have both a right to believe, and an actual belief, that the agent possessed the authority he purported to exercise. *Id.*, 245 Pa.Super. at 443, 369 A.2d at 486.

Appellants contend that Snelling led job seekers, including appellants, to believe that they were dealing, not with a local independent employment agency, but with Snelling and Snelling, Inc., a nationally established and well-known corporation, or with one of its agents. They further claim that they had a right to believe, and did believe, that PPS, upon whom process was served, was authorized to accept service on behalf of Snelling. Thus, appellants argue that, because apparent authority existed, service upon PPS, the Snelling licensee, constituted service upon Snelling and Snelling, Inc.

Snelling, on the other hand, argues that no apparent authority existed. To buttress this contention, Snelling points to a clause in its "license agreement" with PPS which states that the licensee is not authorized to act on behalf of the licensor. However, "the fact that the franchise agreement expressly denies the existence of an agency relationship is not in itself determinative of the matter." *Drexel v. Union Prescription Centers*, 582 F.2d 781, 786 (3d Cir. 1978). *See also Drummond v. Hilton Hotel Corp.* 501 F.Supp. 29 (E. D. Pa.1980). Rather, it is the nature and extent of the control, as established by the practice of the parties, that is controlling. *Id.*

An examination of the terms of the license agreement indicates that Snelling retained and exercised the right to control both the manner in which PPS conducted its business and the representations that PPS made to prospective clients. The following provisions included in the license

agreement, are indicative of the nature and extent to which Snelling retained and exercised the right to control its licensee, PPS:

1. The licensee acknowledges that it is desirous of becoming part of the International Snelling System. (Introduction—paragraph 3).

2. Snelling "grants to the licensee" the perpetual right . . . to be identified as a member of the Snelling System . . . ." (paragraph 1(a)).

3. The licensee may not change its location without Snelling's written approval. (paragraph 1(a)).

4. *The licensee may use no name or service mark other than "Snelling and Snelling."* (paragraph 1(c)). (emphasis added)

5. The licensee may not change its corporate name without Snelling's written approval. (paragraph 1(d)).

6. The licensee must commence operations within 90 days from the date of the agreement. (paragraph 1(g)).

7. The licensee must use training manuals provided by Snelling. The manuals are to remain the property of Snelling. (paragraph 2(a)).

8. The licensee must train each employee in the methods and techniques developed by Snelling. (paragraph 2(c)).

9. The licensee must strictly follow and comply with the procedures, methods and standards set forth in the Snelling training manuals. (paragraph 2(d)).

10. Snelling and Snelling shall receive from the agency seven percent (7%) of the agency's gross receipts from the operation of its business, payable monthly. (paragraph 3(b)).

11. The licensee must maintain its office in keeping with the standards established by Snelling. (paragraph 4(a)).

12. The licensee shall file with Snelling a monthly report indicating the name, address, employment date and job classification of each person hired during the preceding month. In the event an employee is terminated, the

report must also include the date and reason for the termination. (paragraph 4(b)).

13. The licensee shall provide monthly reports, regarding its business operation for the preceding month, on forms prescribed by Snelling for that purpose. (paragraph 4(c)).

14. The licensee must present invoices, on forms prescribed by Snelling, for services rendered. (paragraph 4(d)).

15. Licensee shall send to Snelling, on the last business day of each week, or if requested by Snelling shall send to it on a daily basis, a copy of each job order received by Licensee, from employers, which shows a salary or potential earning capacity of $7,500 per year or more. Licensee shall not distribute such job orders to anyone other than Snelling or Snelling's designee and Licensee shall not be entitled to any remuneration for placements made on such job orders by other Snelling licensees. (paragraph 4(e)).

16. Licensee shall keep true and correct business records and books of account and shall establish and maintain such records in accordance with normally accepted methods and procedures of accounting. (paragraph 4(f)).

17. The agency must keep its books and records open to Snelling and subject to Snelling's inspection. It must also furnish to Snelling, upon request, copies of its corporate stock transfer records and books. (paragraph 4(g)).

18. The licensee must have an annual audit made and must furnish to Snelling, without charge, a copy of such certified audit. (paragraph 4(h)).

19. The licensee shall promptly supply, on Snelling's request, net cash receipt figures for the period beginning June 1 and ending May 31 of each year. (paragraph 4(i)).

20. The licensee must use only the standard form of reports, stationery, and other printed material uniformly prescribed by Snelling for use by members of the Snelling System. (paragraph 6(a)).

21. The agency must advertise in the yellow pages of the telephone directory serving its area by placing "at

least a one-inch in-column advertisement in form prescribed by Snelling." (paragraph 6(b)).

22. The agency is precluded from engaging either directly or indirectly in any temporary help service business or from being associated with any such business, unless it obtains a separate license to do so from Snelling. (paragraph 7(a)).

23. The licensee may not be employed by, or associated in any way with, any personnel or employment agency other than as a Snelling licensee during the term of the agreement. (paragraph 8(a)).

24. The licensee, in consideration of the value of the Snelling name and of Snelling's reputation, may not for two years following termination of the agreement engage in a similar business within ten miles of any Snelling office. (paragraph 8(b)).

25. The licensee must maintain in effect at all times during the term of the agreement certain insurance policies, naming Snelling as an additional insured. (paragraph 10(a)).

26. The licensee must deliver to Snelling evidence of insurance coverage and must promptly notify Snelling of any and all claims against the licensee and/or Snelling under the insurance policies. (paragraph 10(b)).

27. If the licensee fails to perform any of its obligations, Snelling shall have the right to terminate the license by giving the licensee ten days' written notice. (paragraph 11(a)).

28. The agency is obliged to recognize that its personnel consulting and employment agency business is *"one of a large number of Snelling businesses ...."* (paragraph 11(f)) (emphasis added).

29. The licensee may not assign or transfer its shares of stock without Snelling's prior written approval. (paragraph 14(a)).

30. The licensee shall not merge, consolidate or reorganize its business without the prior written consent of Snelling. (paragraph 15(a)).

The foregoing list of provisions, which is by no means exhaustive, affords ample evidence of the comprehensive control that Snelling retained over PPS. Moreover, such an all encompassing degree of control supports the conclusion that persons of ordinary prudence, diligence and discretion would be led to believe they were dealing with an agent or employee of Snelling when dealing with PPS.

It is clear that, because of the necessity to protect "product, service, know-how and name . . .," private franchising, a multi-billion dollar enterprise, could not thrive if franchisors/licensors did not maintain some control over franchisees/licensees. *Singleton v. International Dairy Queen, Inc.,* Del., 332 A.2d 160, 162 (1975). However, when the control retained by the licensor becomes as all-embracing as it is here, and when the licensor can dictate virtually every aspect of the licensee's business operation as it can here, a third person may justifiably and reasonably believe that the licensee is the agent of the licensor, at least for service of process purposes.

Having concluded that PPS was Snelling's agent within the meaning Pa.R.Civ.P. 2180(a)(2), I turn now to a determination whether Snelling was served at an "office or usual place of business." A corporation that is doing business within a county for venue purposes is not necessarily subject to service under Rule 2180. *Sullivan v. Harleysville Insurance Co.,* 16 D. & C.3d 34, 38 (1980). Whether Snelling was properly served at its office or usual place of business depends on the type of activity it conducted in Allegheny County, which, in turn, rests on an analysis of the relationship between PPS and Snelling. *See Myers v. Mooney Aircraft, Inc.,* 429 Pa. 177, 190, 240 A.2d 505, 513 (1967). *See also Pyle v. Pennsylvania National Insurance Co.,* 11 D. & C.3d 663, 671 (1979). Because I conclude that PPS was Snelling's agent, rather than an independent contractor, and because PPS was doing business on behalf of Snelling in an office in Allegheny County, there is sufficient evidence to support the conclusion that the PPS office was an "office" and "usual place of business" of Snelling. *Myers,* 429 Pa. at 190, 240 A.2d at 513.

Such being the case, service of process upon Snelling was accomplished by delivery of process to "an agent . . . at any office or usual place of business of the corporation. . . ." Thus, Snelling was properly served.

The peculiar circumstances of the instant case give added weight to such a conclusion. Appellants filed their original complaint on or about January 28, 1976. Service was made upon Snelling and Snelling, Inc. on February 3, 1976, by hand delivery of a copy of the Writ of Summons and Complaint to Toni Page, a person in charge of PPS, a Snelling licensee. On February 17, 1976, Paul G. Kachulis, Esquire, entered an appearance as counsel for, and filed preliminary objections on behalf of, all defendants, including Snelling and Snelling, Inc., none of which raised lack of personal jurisdiction over Snelling. Subsequently, on June 3, 1976, the trial court dismissed the preliminary objections, and defendants were directed to file their Answers.

More than seven months thereafter, on January 5, 1977, defendants, including Snelling and Snelling, Inc., filed their Answer. On February 28, 1977, class certification was granted and the trial court rendered a non-jury verdict for all defendants. On March 22, 1977, the trial court dismissed plaintiffs' exceptions. Judgment was entered for defendants on May 9, 1977, and an appeal was taken to this court on May 10, 1977.

On July 12, 1978, the Superior Court reversed the trial court and held for all appellants. *Novelli et al. v. Pancoast Personnel, Inc. et al.*, 257 Pa.Super.Ct. 450, 390 A.2d 1323 (1978). The Supreme Court denied appellees' Petition for Allocatur on November 21, 1978.

On January 16, 1979, Attorney Kachulis filed a Petition to Withdraw his Appearance for certain defendants, including Snelling and Snelling, Inc. On May 24, 1979, Snelling, through Jon Hogue, Esquire, filed a Special Petition to Intervene, which included preliminary objections raising, for the first time, the questions of improper service and lack of personal jurisdiction. Following extensive discovery, oral argument was had on June 25, 1980. On July 8, 1980, the

trial court sustained Snelling's preliminary objections and dismissed Snelling as a defendant. This appeal followed.

Inasmuch as this action was commenced in early 1976, appellees had every reason to believe that Snelling had been properly served until May 24, 1979, more than three years later. The majority cites paragraph 21 of the licensee's answer to appellants' complaint as evidence of the fact that appellants had notice that proper service had not been made upon Snelling. At 1215. I disagree. This paragraph is nothing more than a statement that Snelling and Snelling, Inc. would not be liable for any wrongdoing of its licensee. It does not address the issue of improper service. Moreover, since lack of personal jurisdiction was not raised in the preliminary objections filed on Snelling's behalf in February, 1976, that defense was waived. *Encelewski v. Associated East Mortgage Co.*, 262 Pa.Super.Ct. 205, 210, 396 A.2d 717, 719 (1978). *See also Myers v. Mooney Aircraft, Inc.*, 429 Pa. 177, 190, 240 A.2d 505, 513 (1967). Thus, appellants were entitled to conclude either that Snelling had been properly served or that any objections to personal jurisdiction had been waived.

The conclusion reached by the trial court, and approved by the majority, works severe and irreparable harm upon appellant class which, though blameless, is left without recourse against Snelling inasmuch as the statute of limitations has run. I am unable to subscribe to such an uncalled-for and unwarranted result, especially since, if Snelling had no actual notice of this law suit, blame therefore must rest squarely on its shoulders. Paragraph 9(a) of the license agreement states that:

> ... Licensee agrees to indemnify and hold SNELLING harmless from any and all claims, suits, demands or other causes of action, including reasonable attorneys' fees and expenses in defending the same, which may arise or be asserted against SNELLING by reason of the operation of Licensee's business or by reason of Licensee's use of SNELLING'S name.

Thus, it is clear that Snelling anticipated or, at the very least, considered the possibility that suit might be brought against it as a consequence of the business activities of PPS. It could and should, therefore, have required PPS to provide prompt notification of any such suit, particularly inasmuch as Snelling specifically employed such a safeguard in connection with similar eventualities. For example, paragraph 10(b) of the license agreement requires that the "Licensee shall promptly notify Snelling of any and all claims against Licensee and/or Snelling under said policies of insurance." PPS knew, or through the exercise of reasonable diligence could have known, that Snelling had not been separately served with process. In spite of such knowledge, PPS, for approximately three years, instructed and/or permitted counsel it had retained to hold himself out as representing Snelling. Yet, PPS apparently took no steps to bring any of this information to Snelling's attention. Given the nature and extent of Snelling's bargained for control over PPS, and the constant exercise thereof, any dereliction by PPS and the consequences thereof, if any, ought not be visited upon Appellants. Rather, they are matters for Snelling and PPS to resolve inter se.

I would therefore reverse the order of the trial court.