**SEI CORPORATION**

v.

**NORTON & COMPANY, a limited partnership, Norton & Company, Inc., Norton Holdings Company, B. Roy Norton, III, Randall C. Perry, Alexander B. van Putten, Mark D. Oakley, and Richard K. Vaughan.**

Civ. A. No. 84–5101.

United States District Court,
E.D. Pennsylvania.

March 31, 1986.

Raymond T. Cullen, Ronald Hauben, Philadelphia, Pa., for plaintiff.

Ira P. Tiger, Philadelphia, Pa., for Alexander van Putten.

Joel Todd, Philadelphia, Pa., for all other defendants except Richard K. Vaughan.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is defendants' motion for reconsideration of their motion for a new trial and motion for judgment notwithstanding the verdict, and defendant Alexander B. van Putten's motion to set aside the judgment against him.

FACTS

On October 19, 1984, plaintiff SEI Corporation ("SEI") filed a complaint only against Norton & Company, a limited partnership ("Norton"). On December 13, 1984, an answer and counterclaim were filed by attorneys for Norton & Company. On December 28, 1984, the court entered its scheduling Order in accordance with Federal Rule of Civil Procedure 16 that required all discovery to be completed by May 1, 1985, and pretrial memorandums to be filed by May 15, 1985, on which date the case was to go on the trial list. These dates were later extended by a stipulation of the parties approved by the court that resuled in pretrial memorandums to be filed by July 1, 1985, at which time the case was to go on the trial list. This stipulation was filed of record and appears as docket entry # 14, filed June 21, 1985. The case was placed on the court's trial list on July 1, 1985, and published in *The Legal Intelligencer* in keeping with court procedures every day thereafter. The case was called for trial on July 15, 1985, and proceeded through to verdict on July 19, 1985.

More than two months before the case was called for trial, on May 7, 1985, Joel W. Todd, Esquire entered his appearance on behalf of Norton & Company and the previous attorneys withdrew their appearance. On May 16, 1985, the court granted SEI's unopposed motion to amend its complaint, naming as defendants: Norton, Norton & Company, Inc. (the successor corporation to the limited partnership), Norton Holdings Company, and the alleged general partners of Norton, B. Roy Norton, III, Randall C. Perry, Alexander B. van Putten, Mark D. Oakley and Richard K. Vaughan. The alleged basis for the joinder of the individuals is that each of them were "at all times relevant hereto, a general partner of Norton & Company, a limited partnership." (Amended complaint ¶¶ 5–8). The sole basis of the alleged liability of defendant van Putten and the other individuals is the claim that "the general and limited partners of, and successor in interest to, Norton & Company are liable for the obligations of Norton & Company." (Amended complaint ¶ 28).

By a confirming letter dated May 22, 1985 from the attorney for SEI to attorney Todd, Todd agreed to accept service of the summons and amended complaint on behalf of *all* the named defendants, including Mr. van Putten, except for Richard K. Vaughan. On June 13, 1985, Todd filed an answer to plaintiff's amended complaint on behalf of all the named defendants, including Mr. van Putten, again with the exception of defendant Vaughan. Of particular significance is the fact that Todd admitted that at all relevant times defendants B. Roy Norton, III, Randall C. Perry, Mark D. Oakley and *Alexander B. van Putten* were all general partners of Norton. (*See* paragraphs 5, 6, 7 and 8 of the answer to the amended complaint).

On June 21, 1985, which was the same day that the court approved the stipulation extending pretrial memorandum filing dates and consequently the date the case would go on the trial list until July 1, 1985, Todd sent a copy of the amended complaint and defendants' answer thereto to Mr. van

Putten, along with the following cover letter:[1]

Dear Mr. Van Putten:

Enclosed please find a copy of the AMENDED COMPLAINT and the DEFENDANTS' ANSWER TO AMENDED COMPLAINT, which have been filed in the above captioned case.

You have been named as an individual defendant. This firm has been retained to provide overall representation to the defendants. You are entitled to separate counsel; and I would suggest that you discuss this matter with your attorney at your earliest opportunity.

Please call me if you have any questions.

Very truly yours,

Joel W. Todd.

Mr. van Putten received the letter and enclosed pleadings on June 25, 1985. (Van Putten affidavit ¶ 2). Prior to receiving this letter van Putten was unaware that he had been named in the suit and had never before heard of attorney Todd. (Van Putten affidavit ¶ 2). Van Putten promptly forwarded the letter and pleadings to his authorized attorneys in New York City, Schnader, Harrison, Segal & Lewis (the "Schnader firm"),[2] who received the package of documents "at the end of June, 1985." (Cohen affidavit ¶ 2).

It is crucial to recognize that at this very moment there was on file in the public docket maintained by the Clerk of the United States District Court for this district all of the pleadings in the case that could be inspected by anyone by merely asking to see the file. Indeed, a telephone call to the Clerk about an important matter in that public file would have been responded to by the Clerk in keeping with local practice. In this file, *which was not voluminous at that time*, in addition to all of the other papers, was the answer to the amended complaint filed on Mr. van Putten's behalf by attorney Todd two weeks earlier. More importantly, there rested in the file the

court's Order of December 28, 1984, setting forth all of the pretrial requirements and discovery and trial scheduling dates required under Federal Rule of Civil Procedure 16, including a reference to the fact that the case was to go on the trial list on May 15, 1985. As stated previously in this Memorandum, this date was postponed to July 21, 1985, by reason of the court's extending the pretrial memorandum filing date from May 15, 1985, to July 1, 1985.

On July 15, 1985, a jury was selected and trial commenced. At no time prior to the commencement of the trial did Mr. van Putten or an attorney from the Schnader firm notify the court or plaintiff of any problem with attorney Todd's authority to represent Mr. van Putten. On July 17, 1985, on the third day of trial, van Putten, through his local counsel Ira P. Tiger of the Schnader firm, for the first time appeared before the court and raised the issue of Todd's purported unauthorized representation of Mr. van Putten, and argued that service of the complaint as to Mr. van Putten was therefore improper. It must be noted here that neither the defense of insufficiency of process nor insufficiency of service of process as to van Putten was ever raised in a motion under Rule 12 or in the answer filed by Todd on June 13, 1985. He did raise the defense of lack of personal jurisdiction over all of the defendants, except Norton Company and Vaughan as an affirmative defense in his answer, *but* this was limited to the defense arising under the Pennsylvania Long-Arm Statute, 42 Pa. C.S.A. 5301, which intention is made clear when Todd's pretrial memorandum addressing lack of personal jurisdiction is limited to the long-arm statute claim. *See* Todd's pretrial memorandum on behalf of defendants filed July 2, 1985. Nowhere in any of the pleadings or at any time prior to Mr. Tiger's appearance before the court mid-trial, was the question of insufficiency of process or insufficiency of service of

---

**1.** A copy of this letter was not sent to plaintiff or plaintiff's counsel.

**2.** It is unclear from the record which particular attorney at the Schnader firm represented van Putten. Therefore, the court will refer to the firm's representation generally.

process ever raised.[3] At a hearing outside of the presence of the jury, the court concluded that since counsel of record for Mr. van Putten, Joel Todd, had accepted service of the amended complaint on van Putten's behalf, service was proper. Later that same day, again outside of the presence of the jury, the court denied defendants' oral motion to amend the answer to the amended complaint in regard to the partnership status of Mr. van Putten and Mr. Oakley.

On July 19, 1985, the jury returned its verdict in favor of SEI and against defendants Norton, Norton & Company, Inc., B. Roy Norton, III, Randall C. Perry, Alexander B. van Putten and Mark D. Oakley in the amount of $183,970.00.[4] Formal judgment on the verdict was entered on July 23, 1985. On August 19, 1985, the court amended the judgment to allow prejudgment interest in the amount of $25,054.68. On July 31, 1985, defendant van Putten filed a motion to set aside the judgment. On October 22, 1985, the court denied defendants' motion for a new trial and motion for judgment notwithstanding the verdict. On November 1, 1985, defendants' filed a motion for reconsideration of defendants' motion for a new trial and for judgment notwithstanding the verdict.

DISCUSSION

A.) *Defendant van Putten's Motion to Set Aside the Judgment*

Defendant van Putten contends that the verdict against him should be set aside because attorney Todd was not authorized to accept service of process on his behalf and consequently no personal service of process was ever effectuated.

The record shows that attorney Todd never had any face-to-face or direct discussions with van Putten concerning his authority to accept service or to answer the amended complaint on van Putten's behalf.

3. These defenses are waived if not raised in either a motion permitted under Federal Rule of Civil Procedure 12 or in the answer to a complaint. *See* Federal Rule of Civil Procedure 12(h).

4. On July 18, 1985, defendants' motion for a directed verdict for failure to state a cause of

On July 17, 1985, the following colloquy took place:

MR. TODD: If the Court pleases, as the Court knows, I have not only been representing Norton & Company, Norton & Company, Inc., but certain individuals in a lawsuit presently before the Court.

I undertook that representation based upon the express directions I was given by B. Roy Norton, III, and Randall C. Perry.

Testimony was presented at depositions and documentation was provided to me which indicated that Mr. Alexander Van Putten was a general partner of Norton & Company at the points that would be relevant to this lawsuit.

I was also instructed to represent Mr. Van Putten along with all the other defendants, individually named defendants, who were also partners, and, as the Court knows, I raised the appropriate legal defenses, including the failure to state a cause of action against the individuals—

THE COURT: Did Mr. Van Putten hire you to be his lawyer?

MR. TODD: Not personally, sir.

THE COURT: How can you undertake to represent somebody under the Code of Professional Responsibility?

Do you have a mail-order business?

Don't you know, as a lawyer, that you have to communicate with your client?

MR. TODD: Well, sir—

THE COURT: Who is Mr. X to tell you to represent Mr. Y?

MR. TODD: The point, sir, is that I was representing the individuals, I was dealing with what I thought was the primary general partner of Norton & Company. I was under the instructions—

action with regard to Norton Holdings Company was granted. Due to plaintiff's failure to have the amended complaint served upon defendant Richard K. Vaughan, all claims against Mr. Vaughan were dismissed for lack of prosecution.

THE COURT: The complaint didn't say that.

Did you read the complaint?

MR. TODD: Yes, sir.

THE COURT: Did it say that?

Is it your understanding of the law that, if you have any knowledge of that part of the law, individually named persons can not be held liable and have judgments against them?

How about Mark Oakley? You purport to represent him.

MR. TODD: I have not spoken with him personally, sir.

THE COURT: And yet you are in this court purporting to represent his interests; is that right?

MR. TODD: Yes, sir.

And the defenses that I have raised are the fact that there is no basis of personal jurisdiction in this court for either Mr. Oakley or Mr. Van Putten. Those are the defenses that I raised, and on the instructions of Mr. Perry and Mr. Norton, all I did was accept service from the standpoint of not requiring mail service to those individuals.

THE COURT: Oh, you did more than that. You filed an answer on behalf of those people.

MR. TODD: Based upon documents given to me and testimony at depositions in which it was stated under oath that those individuals were the general partners of Norton & Company at the time that these transactions took place.

 While there is a strong presumption that an attorney who enters an appearance on behalf of a party has authority to act on such party's behalf, *In re Record Club of America*, 28 B.R. 996, 999 (M.D. Pa.1983); *In re Sarah Allen Home, Inc.*, 7 B.R. 732, 734 (E.D.Pa.1980), no person has the right to appear as another's attorney without the other's authority. *Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 47 S.Ct. 361, 71 L.Ed. 658 (1927); 7 Am.Jur.2d *Attorneys at Law* § 141 (1980). It is a fundamental principle of agency that for a principal to be liable to third parties for the acts of the agent, an agency relationship must

first be established. Restatement (Second) of Agency § 140. An agency relationship may be established by (1) express authority; (2) implied authority, to do all that is proper, usual and necessary for the authority actually granted; (3) apparent authority, as where the principal holds one out as agent by words or conduct; and (4) agency by estoppel. *See Apex v. Financial Corp. v. Decker*, 245 Pa.Super. 439, 369 A.2d 483, 485 (1976).

> Where one assumes to act as the agent of another, the burden of showing authority so to act lies on the person who avails himself of such acts in order to charge a third person as principal.... *Agency will not be assumed from the mere fact that one does an act for another. The fact of agency must be established.* (Emphasis added).

*Reifsnyder v. Dougherty*, 301 Pa. 328, 333, 152 A. 98, 100 (1930).

 At the time Todd accepted service of the complaint on van Putten's behalf no principal-agency relationship existed, thus, Todd's acceptance of service was an unauthorized act and cannot be binding against Mr. van Putten. Furthermore, attorney Todd had no authority to answer the complaint on Mr. van Putten's behalf. Consequently, had van Putten not learned of Todd's unauthorized representation until *after* a judgment had been obtained against him, such judgment would unquestionably be set aside. *See General Electric Credit Corp. v. Salamone*, 349 N.Y. S.2d 446, 448 (1973).

Mr. van Putten's agency status changed, however, on June 25, 1985, when he learned that he was a named defendant in the lawsuit and of attorney Todd's unauthorized acceptance of service and entry of appearance on his behalf. By June 30, 1985, the Schnader firm had become Mr. van Putten's authorized agent, completely knowledgeable of Todd's unauthorized acceptance of service, appearance on van Putten's behalf, and subsequent unauthorized admissions as to van Putten's partnership status. Instead of immediately notifying the court of Todd's unauthorized represen-

tation, van Putten's authorized agent waited until the third day of trial, when Ira Tiger of the Schnader firm appeared before the court and for the first time alleged improper service of process upon van Putten. This was almost three (3) weeks after van Putten had learned, and over two (2) weeks after the Schnader firm had learned of the unauthorized representation.

"An affirmance of an unauthorized transaction can be inferred from a failure to repudiate it." Restatement (Second) of Agency § 94 (1958). *See also Pueblo of Santo Domingo v. United States,* 647 F.2d 1087, 1089 (Ct.Cl.1981). An affirmance of an unauthorized act can be inferred from the principal's silence, even though the purported agent was theretofore a stranger to the principal, whom "according to the ordinary experience and habits of men, one would naturally be expected to speak if he did not consent." Restatement (Second) of Agency § 94, comments a and b. *See also* Restatement (Second) of Agency § 26, comment d, and § 8B, comment c. Comment c to § 103 of the Restatement provides:

> If a person knows or has reason to know that another has purported to be his agent or has simulated him or his act, and that a third person has been deceived thereby and is likely to act upon his erroneous belief, he must take such steps to correct the misinformation as would be taken by a reasonable person having ordinary regard for the interests of others if he is to avoid liability. *If he fails to use care to undeceive the third person, he becomes subject to liability to him as if the facts were as believed by him to be,* provided the deceived person changes his position in reasonable reliance upon their truth. (Emphasis added).

Restatement (Second) of Agency § 8B provides, in pertinent part:

> (1) A person who is not otherwise liable as a party to a transaction purported to be done on his account, is nevertheless subject to liability to persons who have changed their positions because of their

belief that the transaction was entered into by or for him, if

. . . . .

> (b) knowing of such belief and that others might change their positions because of it, *he did not take reasonable steps to notify them of the facts.* (Emphasis added).

Comment d of § 8B articulates the extent of the principal's duty to notify third parties of an unauthorized act:

> When one realizes that another is or may come under a misapprehension as to the authority of his agent ...—a misapprehension for which he is not at fault,—his duty to give information is a duty of due care. *It is proportioned to the likelihood of harm and to its extent. If only a specific third person is involved, the duty of the purported principal can frequently be discharged by an inexpensive letter or telephone message....* the action required is that which would be taken by a reasonably prudent business man, with the normal regard for the interests of others and his own reputation. (Emphasis added).

In the present case, upon learning of Todd's unauthorized representation from the letter of June 21, 1985, and knowing that plaintiff had apparently been deceived thereby, van Putten's authorized counsel was under a duty to promptly notify either plaintiff or the court of Todd's unauthorized representation. Van Putten argues in his motion that since there was "nothing in Mr. Todd's [June 21st] letter to indicate that anything in the case (let alone trial) was imminent" this somehow relieved van Putten from notifying the court or plaintiff any sooner than was done. The court rejects this position. Any reasonably prudent attorney with normal regard for the interests of his client would have *immediately* notified Todd, the plaintiff, and the court of Todd's unauthorized representation. This could have been easily accomplished by an "inexpensive letter or tele-

phone message."[5] Restatement (Second) of Agency § 8B, comment d, *supra.* Had van Putten's counsel so acted, the court, and more importantly plaintiff's counsel, would have learned of a claim of Todd's unauthorized representation two or possibly three weeks prior to commencement of trial.

Van Putten's authorized counsel, however, despite the fact that on July 1, 1985, the case was on the trial list and was published in *The Legal Intelligencer* daily thereafter, did nothing to respond to the prospect that their client was represented by someone who did not have authority to proceed. Meanwhile, plaintiff justifiably relied on Todd's representations as to his authority to accept service of the complaint on van Putten's behalf and in reliance upon the answer that was filed on van Putten's behalf, forged ahead with its trial preparation and, indeed, entered upon the trial for three days without any indication of any kind to plaintiff's counsel or the court that Todd's representation was claimed in some way to be flawed. To have allowed van Putten to raise a defective service of process defense, for the first time, on the third day of trial would have seriously prejudiced the plaintiff, which is in itself subordinate to the fact that such a defense had been waived by reason of the application of Federal Rule of Civil Procedure 12(h). It is because such prejudice will befall an unsuspecting plaintiff that waiver is expressly provided in regard to a defense that can and should be raised promptly and when done, can either be promptly remedied or can result in a prompt dismissal of a case, thereby saving the claiming party considerable delay and expense in advancing a claim in respect to which personal jurisdiction is defective.

5. Van Putten's authorized counsel also had a duty to immediately investigate the status of the civil suit. Counsel should have been alerted as to the possibility of a pending trial date by the fact that the case had an "84" civil action number. Such investigation could have been accomplished easily and expeditiously by either picking up the phone and calling Todd or contacting counsel's Philadelphia office and having local counsel review this court's civil list in *The Legal Intelligencer* (the case was first listed in the

■ Simply put, van Putten's authorized counsel's failure to immediately notify either plaintiff or the court of Todd's unauthorized conduct acted to affirm Todd's actions, and van Putten is estopped from denying such ratification. *See* Restatement (Second) of Agency § 94 and § 103. While it is probably true that van Putten assumed that his authorized counsel would take proper and expedient actions to protect his interests, van Putten is nonetheless liable to plaintiff for the actions or inactions of his authorized agent. Consequently, van Putten's motion to set aside the judgment against him will be denied. *See Shoal v. Bailey,* 139 Mont. 198, 362 P.2d 234, 236 (1961).

The court is not unmindful of the result such a ruling may ultimately have upon Mr. van Putten. His misfortune is not a direct result of any action or inaction on his own behalf but a result of the actions and inactions of attorneys claiming to represent him and actually representing him. Such legal ineptitude, however, may be the cornerstone of a remedy van Putten may wish to pursue at a later time.[6]

### B.) *Defendants' Motion for New Trial and J.N.O.V.*

Defendants assert numerous grounds in support of their post-trial motions. The court, standing upon its rulings from the bench, summarily disposes of all but one of these arguments as frivolous.

Defendants assert that the court wrongfully denied their oral motion to amend their answer to the amended complaint with respect to the partnership status of Messrs. van Putten and Oakley. The fol-

*Legal* on July 1, 1985), or by placing a phone call with the court's deputy clerk.

6. Van Putten is liable to SEI for his attorney's wrongful conduct during the course of the judicial proceeding irrespective of the fact that his attorney may be subject to judicial discipline. *See* Restatement (Second) of Agency § 253, comment a.

**504**

lowing colloquy took place out of the presence of the jury:

MR. TODD: If the Court pleases, at this time I would like to make an oral motion to amend the defendants' answer to the amended complaint with respect to two specific paragraphs. They would be Paragraphs 7 and 8, with respect to the partnership status of Mr. Alexander B. Van Putten and Mr. Mark D. Oakley.

THE COURT: First, the record should show what your current answer is that you want to amend.

MR. TODD: Yes.

The current answer admits that at all times relevant hereto Mr. Van Putten and Mr. Oakley were general partners of Norton & Company.

At the time that I prepared this pleading, I was relying upon answers given by Mr. Randall C. Perry and Mr. B. Roy Norton, III, at depositions, stating that both of these gentlemen were general partners, and I was relying upon documents that were given to me by the law firm of Haythe & Curley, New York, in which they represented to me that those documents were the operative documents, indicating that both of these gentlemen were general partners.

As the Court knows, for the first time, this morning, we were advised by Ira Tiger, of the firm of Schnader, Harrison, Segal & Lewis, that he is in possession of documents which would contradict the facts as I previously knew them. That would be in the nature of newly discovered evidence, and I would move to amend Answer 7 to at this point put a denial and say that it is beyond, at this point, my ability to either admit or deny that partnership status.

The same with regard to Mr. Oakley on Paragraph 8.

THE COURT: As I understand from the previous discussion that we had on this point outside the presence of the jury, you never had any discussions—we now know that, but at least the Court didn't know—I don't know whether Mr. Cullen did or not—you never had any face-to-face or direct discussions with either Mr. Van Putten or Mr. Oakley concerning your representation or your answering on their behalf.

Is that right?

MR. TODD: No direct discussions with them, that's correct, sir.

THE COURT: All right. Motion denied.

For the same reasons discussed previously, the court refused to prejudice the plaintiff for the actions of defendants' counsel. Authorized counsel's failure to promptly notify the court of Todd's unauthorized admissions in the answer affirmed the admissions and defendants are estopped from denying such ratification. The court could not, in good conscience, suspend a jury trial already well into its third day and expect counsel for plaintiff to scramble about for evidence that it believed it did not need on the partnership issue. Defendants' motion for reconsideration will be denied.

An appropriate Order will be entered.