## Wild Acres Lakes Property and Homeowners Association Inc. v. Coroneos

C.P. of Pike County, no. 1449-1993 Civil.

*James V. Fareri,* for plaintiff.
*Anthony P. Daniel,* for defendants.

THOMSON, *P.J.,* April 16, 1996—This case is before the court after a non-jury trial. On the date set for

the non-jury trial, the parties offered exhibits into evidence and agreed to brief the matter. Trial briefs have been submitted and the matter is ripe for adjudication.

## FACTS

Wild Acres Lakes Property and Homeowners Association Inc., is a nonprofit corporation organized under the laws of Pennsylvania. The Association consists of an affiliation of property owners in a private development known as Wild Acres, located in Delaware Township, Pike County, Pennsylvania.

The defendants Christopher Coroneos and Dimitra Coroneos, husband and wife, own land in Wild Acres. As homeowners, defendants are members of the Association and are bound by the Association's bylaws. On February 25, 1980, defendant Christopher Coroneos purchased lots 32 and 33, block W-1403 in Wild Acres. The deed noted that since lot 33 was unbuildable, it was "not . . . subject to the obligation to pay the annual lien and charge for club dues *imposed on said lot* pursuant to the restrictive covenants set forth in the contract and deed." (emphasis added)

On November 21, 1989, defendants purchased lots 30 and 31, block W-1403 in Wild Acres. These lots, along with lot 32, were subject to all the restrictive covenants mentioned in the deeds. However, the defendants were informed by an Association official that an assessment of dues on each lot could be avoided by the combination of all of the defendants' lots.

On August 20, 1990, defendants obtained approval from the Dingman Township Board of Supervisors to join the four separate lots into a single lot. On August 21, 1990, defendants conveyed to themselves a deed describing the four lots as a single lot.

The Association continued to invoice the defendants for dues and assessments on three lots. The three separate lots being lots 32 and 33, which are considered as

one, and lots 30 and 31. The defendants refused to pay the invoices. On December 10, 1993, the Association filed a complaint seeking recovery of the alleged delinquent fees. On March 22, 1995, we ordered that this matter be heard before an arbitration board. The arbitrators ruled in favor of the Association. On November 8, 1995, defendants appealed to this court.

## DISCUSSION

On two recent occasions we have faced the issue of whether a homeowner in a private development who combines multiple lots into one must continue to pay dues and assessments on all of the original lots. See *Fawn Lake Forest Association Inc. v. Tussel,* 24 D.&C.4th 70 (1995); *Pocono Woodland Lakes Property Owners Association Inc. v. Ochtera,* no. 515-1993-Civil, slip op. (Thomson, P.J., February 15, 1996). As noted in *Ochtera,* these types of cases require a case-by-case analysis of the relevant documents. Slip op. at 3.

The defendants' argument is two-fold. First, defendants refer to article 10(N) of the Association's bylaws which defines "owner." Under article 10(N), an owner is defined as "the grantee in the last deed in the chain of title of the contract vendee . . ., holding any lot situated upon the properties. . . ." Defendants argue that their deed to themselves reconveying the four lots as one lot is the last deed in the chain of title and, therefore, there is only one lot. Secondly, defendants argue that they detrimentally relied upon the statement of the Association official that a combination of their lots would result in a reduction of fees. We reject defendants' arguments.

### Analysis of the Relevant Documents

"Purchasers of land in private residential developments have a duty to pay a proportionate share of the

fees and assessments levied by associations to support various community services." *Pocono Ranchlands,* slip op. at 3, citing *Meadow Run & Mountain Lake v. Berkel,* 409 Pa. Super. 637, 640, 598 A.2d 1024, 1026 (1991), *alloc. denied,* 530 Pa. 666, 610 A.2d 46 (1992) and *Holiday Pocono Civic Association Inc. v. Benick,* 7 D.&C.3d 378 (1978); see also, *Fawn Lake, supra* at 78.

Defendants are members of the Association and subject to its bylaws. Section 2.1 of the bylaws, entitled "lot ownership," states that "[a]ll persons who are owners of lots located in Wild Acres Lakes, *as described on maps, plats and other documents as recorded in the Office of the Recorder of Deeds of Pike County, Pennsylvania,* shall be members of the Association." (emphasis added)

The covenants at issue in this matter provide, in pertinent part, as follows:

"Each lot owner agrees to pay Wild Acres Country Club Inc., a Pennsylvania corporation, *commencing on the first day of May of the calendar year of his date of purchase and/or contracting for the purchase of said lot,* and on the first day of May each year thereafter, the sum of at least $100 *for each lot.* Such charge is intended to cover the expense of maintaining, protecting and operating the recreational facilities and the roads of Wild Acres." See paragraph 13.a. of the restrictive covenants. (emphasis added)

Paragraph 13.b. discusses charges for maintaining the beach and recreational areas. This paragraph states, in pertinent part: *"the annual charge made for beach privileges shall constitute a lien against each lot* as hereinbefore stated, and in the event that the lot owner shall fail to pay said annual charge within 60 days of the first day of May of each and every year, the lot owner herewith for himself, his heirs and assigns hereby authorizes and empowers any attorney of any

court of record to appear for and confess judgment against the lot owner, his heirs and assigns, for the amount due. . . ."

Deed provisions which require the payment of fees but do not restrict or regulate a lot owner's property are non-restrictive covenants. *Fawn Lake, supra* at 74, citing *Birchwood Lakes Community Association v. Comis,* 296 Pa. Super. 77, 83, 442 A.2d 304, 307 (1982). Since paragraphs 13.a. and 13.b. are similar to the provisions in *Fawn Lake* and *Birchwood Lakes* in that they require the payment of fees but do not otherwise regulate a lot owner's property, we apply the rules of construction for non-restrictive covenants.

None of the relevant documents express the fees due when a lot owner combines multiple lots into one. The *Birchwood Lakes* court stated, "the rule is that if an agreement is not clearly expressed, an effort is made by the court interpreting the language to give effect to the intention of the parties as expressed at the time. 'Where the language of a deed or a restriction is not clear, then in order to ascertain the intention of the parties its language should be interpreted in the light of the subject matter, the apparent object or purpose of the parties, and the conditions existing when it was made.' " *Id.* at 83-84, 442 A.2d at 307, citing *Leh v. Burke,* 231 Pa. Super. 98, 104, 331 A.2d 755, 759 (1974), quoting *Parker v. Hough,* 420 Pa. 7, 12-13, 215 A.2d 667, 670 (1966).

As stated in *Ochtera,* slip op. at 7-8:

"[t]he subject matter here is the ability of a private community association to raise money from its members in order to maintain and repair the common facilities of the communities. Pennsylvania courts have ruled that residential communities 'are analogous to mini-governments and as such are dependent on the collection of assessments to maintain and provide essential and recreational facilities.' *Meadow Run,* 409 Pa. Super.

at 640, 598 A.2d at 1026 (1991), *alloc. denied,* 530 Pa. 666, 610 A.2d 46 (1992), quoting *Holiday Pocono,* 7 D.&C.3d at 385 (1978); See also, *Fawn Lake* at 78-78 [sic]."

Paragraph 13.a. states that the purpose of the fees is to "cover the expense of maintaining, protecting and operating the recreational facilities and the roads in Wild Acres." Section 1.3 of the Association's bylaws states, in pertinent part, that the purpose of the Association is "to hold, operate, manage, maintain, own, repair, replace, develop, construct and improve such real and personal property, including common property, facilities and amenities, as shall from time to time come into its possession. . . ."

We now turn to the conditions existing at the time the agreement was made between the parties. In 1980, defendant Christopher Coroneos purchased lots 32 and 33, but did not have to pay fees on lot 33. In 1989, defendants purchased lots 30 and 31. Pursuant to paragraphs 13.a. and 13.b., defendants expressly agreed to pay fees for lots 30, 31 and 32.

The relevant provisions reveal that it was not the intention of the parties to allow lot owners to alter their duty to pay by combining multiple lots into one. Paragraphs 13.a. and 13.b. were written by the original developer who also laid out the original lots. Therefore, we construe the phrase "lot owner" as found in paragraphs 13.a. and 13.b. to mean the owner of a lot as delineated by the original developer.

Our construction is supported by the deed to the unbuildable lot 33 which stated that the lot was not subject to fees *"imposed on said lot* pursuant to the restrictive covenants set forth in the contract and deed." (emphasis added) In addition, section 2.1 of the bylaws references lots in Wild Acres as those lots "described on maps, plats and other documents recorded in the

Office of the Recorder of Deeds of Pike County, Pennsylvania." We believe the parties to the agreement again referred to the original maps, plats documents recorded by the original developer.

Upon review of the subject matter, the purpose of the parties, and the conditions existing at the time of the agreement we hold that the parties to the agreement intended that the duty to pay dues and assessment attached to each lot as delineated at the time of the original purchase. We further hold that the parties did not intend to allow a lot owner to combine his multiple lots into one at a future date and thereby reduce his fees and charges due.

### Detrimental Reliance on Statement of Association Official

Defendants also argue that they should be allowed to pay only one fee because they detrimentally relied upon the statement of an Association official. As a general rule, a corporation is bound to third parties by contracts only where the contract has been entered into by a corporate officer or agent with:

"(1) express authority directly granted by the principal to bind the principal as to certain matters; or

"(2) implied authority to bind the principal to those acts of the agent that are necessary, proper and usual in the exercise of the agent's express authority; or

"(3) apparent authority, *i.e.* authority that the principal has by words or conduct held the alleged agent out as having; or

"(4) authority that the principal is estopped to deny." *Bolus v. United Penn Bank,* 363 Pa. Super. 247, 260, 525 A.2d 1215, 1221 (1987), citing *SEI Corp. v. Norton & Co.,* 631 F. Supp. 497 (E.D. Pa. 1986).

The trial record did not reveal any express or implied authority of the Association official to bind the Association.

The test for apparent authority is "whether a man of ordinary prudence, diligence and discretion would have a right to believe and would actually believe that the agent possessed the authority he purported to exercise." *Apex Financial Corp. v. Decker,* 245 Pa. Super. 439, 443, 369 A.2d 483, 485-86 (1976), citing *Murphy v. Beverly Hills Realty Corp.,* 98 Pa. Super. 183 (1930). However, "[a]n agent cannot, simply by his own words, invest himself with apparent authority. Such authority emanates from the actions of the principal and not the agent." *Jennings v. Pittsburgh Mercantile Co.,* 414 Pa. 641, 645, 202 A.2d 51, 54 (1964). There is no evidence in the trial record of actions by the Association which would support a finding of apparent authority of the official to bind the Association.

"Authority by estoppel occurs when a principal, by his culpable negligence, permits an agent to exercise powers not granted to him, even though the principal did not know or have notice of the agent's conduct. In the event that a principal fails to take reasonable steps to safeguard himself and to safeguard third persons dealing with an agent from harm caused by the agent, then the principal may be estopped from denying the authority of the agent." *Apex, supra* at 444-45, 369 A.2d at 486, citing *Reifsnyder v. Dougherty,* 301 Pa. 328, 152 A. 98 (1930).

The trial record is devoid of any evidence that the Association had any knowledge of the official's statements to defendants. Since there is no evidence of negligence on the part of the Association, no agency by estoppel occurred. See *Apex, supra* at 445, 369 A.2d at 486. Therefore, we hold that the official had no

authority to bind the Association in this instance and defendants' claim fails.

## Attorney's Fees

The Association has requested reasonable collection costs including attorney's fees. The court is authorized to include an award of attorney's fees in favor of the Association where the covenants or bylaws permitted the imposition of such fees in a collection action. *Wrenfield Homeowners Association v. DeYoung,* 410 Pa. Super. 621, 627-28, 600 A.2d 960, 963 (1991). Section 6.2(C) of the Association's bylaws, permits the Association to recover "reasonable costs of collection, including court costs and attorney's fees." Therefore, we award the Association reasonable collection costs, including attorney's fees.

## ORDER

And now, April 16, 1996, upon consideration of the pleadings, trial record, and trial briefs submitted, judgment is hereby entered in favor of the plaintiff Wild Acres Lakes Property and Homeowners Association Inc. and against defendants Christopher Coroneos and Dimitra Coroneos.

Accordingly, defendants are hereby ordered to pay their delinquent dues and assessment fees together with all reasonable collection costs, including plaintiff's attorney's fees, plus interest at a rate set forth in the Association's bylaws.