**TRUSTEES OF the FLINT MICHIGAN LABORERS' PENSION FUND, Michigan Laborers' District Council Health Care Fund, Michigan Laborers' Pension Fund, Michigan Laborers' Vacation Fund, Michigan Laborers' Training and Education Fund and Industry Advancement Fund, Plaintiffs,**

v.

**IN–PULS CONSTRUCTION CO., a Michigan corporation, Defendant.**

Civ. A. No. 92–CV–40049–FL.

United States District Court, E.D. Michigan, S.D., Flint.

Feb. 23, 1993.

Stipulation to Interest Calculation on Unpaid Contributions March 2, 1993.

Judgment March 18, 1993.

Spender & Robb by Steven F. Spender and Scott Stensaas, Flint, MI, for plaintiff.

Henneke, McKone & Fraim, P.C. by Scott R. Fraim, Flint, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Pending before the Court is Plaintiffs' motion for summary judgment. For the reasons that follow, the motion is GRANTED.

### FACTS

Plaintiffs are the Trustees for the Michigan Laborers District Council fringe benefit funds. The funds are fringe benefit trust funds established pursuant to collective bargaining agreements (CBAs) and governed by trust agreements established under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1101 *et seq.*

The Trustees' auditor conducted an audit of the defendant's payroll books and records for the period of May, 1990 through August, 1991. A bill was sent to defendant for unpaid contributions and collection assessments amounting to $34,498.98. Affid. of Michael J. Gauthier.

Defendant does not contest that the hours are not accurate. Dep. of Dennis Porter, President of In–Puls Construction Co., at 15–16. The only question is whether defendant is bound by the CBAs. Defendant does not contest that it owes $5,614.90, pursuant to a CBA with Laborers Local 1075 of Lansing, Michigan. Defendant does contest that it is bound to the agreement with Laborers Local 998 of Flint. The balance of the unpaid bill is owed pursuant to the agreement with Local 998.

Mr. Dennis Porter, President of In–Puls Construction Co., never signed the Collective Bargaining Agreement with Local 998. Porter Dep. at 33. The individual from Local 998 with whom he negotiated is now deceased. The payroll reports, signed by Mr. Porter, that were submitted to the City of Lansing, paid the Local 998 CBA rate, $14.29 per hour, to workers, and included references to both Locals that plainly refer to contributions to the fringe benefit fund. *E.g.,* Plaintiff's Ex. E–4, at 2 ("Local 1075— $3.72 per hour worked Local 998—$3.12 per hr. worked"). $3.12 was the rate provided in the Local 998 CBA for fringe benefits.

Mr. Porter also wrote Defendant's name, "In–Puls Const" in two places on the Local 998 CBA. Porter Dep. ("Q. I think that firm name is my handwriting. A. You mean the In–Puls Construction? Q. Yes. Possibly—")

Defendant's employee, Paulette Cool, signed, pursuant to authorization from Dennis Porter, Porter Dep. *quoted* in Plaintiff's Brief at 4, fringe benefit contribution reports for June–September, 1991 containing the following statement:

> By filing this form the undersigned agrees to the terms of payment as set forth in the current Collective Bargaining Agreement and Trust Agreement and agrees that the detailed basis upon which the payments are made is set out on the reverse side of this form.

Def's Ex. D–2. The first page of D–2 specifically refers to Union Local 998.

Mr. Porter also concedes that In–Puls deducted $1.00 per hour from each employee's gross pay pursuant to the Local 998 CBA, Porter Dep. at 40–41, to pay into the vacation fund. While this deduction was made, the contribution was never made. Unlike the other fringe benefits, which are paid over and above the gross wages, the vacation benefits come out of gross wages.

974

## LEGAL ANALYSIS

The familiar standard of Fed.R.Civ.P. 56 applies. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This case is admittedly a close one for resolving on summary judgment, and *Catrett's* strict interpretation of the language of Fed. R.Civ.P. 56 guides this Court in the analysis of this case.

■■■ Plaintiff argues that it should be granted summary judgment because In–Puls' writings and actions establish Defendant's liability. A written agreement is a condition for the Trustees' collection of fringe benefit contributions. § 302(c)(5)(B) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5)(B) ("the Statute" or "the Act").[1] The purpose of § 302 is to prevent the misappropriation of employee funds by union officials. *Central States Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 459 (6th Cir. 1989). Therefore, § 302(a) generally prohibits an employer from contributing funds to employee representatives. *Behnke*, 883 F.2d at 459. § 302(c)(5)(B) provides an exception for trust funds that benefit employees in accordance with a "written agreement."

The interpretation of this statute's "written agreement" requirement is central to this case. Plaintiff contends that while a written agreement is required, it need not be in the form of a signed CBA. *Central States Southeast and Southwest Area Pension Funds v. Kraftco, Inc.*, 799 F.2d 1098, 1111, n. 16 (6th Cir.1986), *cert. denied*, 479 U.S. 1086, 107 S.Ct. 1291, 94 L.Ed.2d 147 (1987).

While neither party discussed the matter, ERISA also requires every employee benefit plan to be established and maintained according to a written instrument. 29 U.S.C. § 1102(a). *See also* 29 U.S.C. § 1145 (ERISA § 515) which requires employers who are obligated to contribute to a multiem-

ployer plan to make contributions in accordance with the plan.

Defendant claims that its President, Dennis Porter, agreed that he would sign a contract with Local 998 if there were an agreement as to wages. It denies that the agreement as to wages was ever made. Defendant contends that for purposes of this motion, this Court must find the existence of the agreement is a question of fact, and that the absence of Mr. Porter's signature on the CBA provides the genuine issue of material fact necessary to determine whether an agreement existed. Cf. *Merrimen v. Paul F. Rost Electric, Inc.*, 861 F.2d 135, 139 (6th Cir.1988) (finding signature of assent is mandatory).

In addition, Mr. Porter clearly states in his deposition that he had no contract with Local 998. Porter Dep., *supra*. This sworn testimony constitutes affirmative evidence that is contrary to Plaintiff's claim that the actions and writings of In–Puls manifested an intention to be bound by the CBA. The issue for the court is whether this evidence is sufficient under the law that a reasonable finder of fact could rule in favor of Defendant. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

In *Kraftco*, the Sixth Circuit stated in a footnote that the written agreement required by 29 U.S.C. § 186(c)(5)(B) need not be in the form of a signed collective bargaining agreement, as long as it sets out the employee's obligations to contribute. *Kraftco, supra*. Here, plaintiffs contend that defendant's acts discussed *supra* constitute the written agreement necessary to bind it to the CBA. Defendant contends that it was never bound by the CBA, and it merely attempted to apply some of its terms voluntarily.

The writings that set out the employee's obligations to contribute are the following: (1) the handwritten name of the company on the CBA. This clearly presents a factual issue as to whether it binds defendant since

---

1. Section 302(a) of the National Labor Relations Act, as amended, 29 U.S.C. § 186(a) restricts the circumstances under which an employer may contribute monies to employee groups. However, this general prohibition on contributions

    shall not be applicable ... (5) with respect to money or other thing of value paid to a trust fund established by such [employee] represen-

tative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents ... provided, that ... (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer....

29 U.S.C. § 186(c).

Defendant's statement that it is his handwriting is somewhat ambiguous, *supra*; (2) the authorized signature of Paulette Cool on documents for four months that reference the CBA. This evidence is *uncontroverted* and appears to clearly invoke the CBA; (3) The payroll forms signed by Mr. Porter which invoke Local 998, authorize payment of Local 998's pay rates and refer to amounts agreed to be paid for fringe benefits; (4) the vacation deduction, in accordance with the CBA.

In *Merrimen, supra,* the court adopted a "literal construction of section 302(c)(5)(B)" 861 F.2d 135, 138 (6th Cir.1988), holding "It is undisputed that no signatures of assent were recorded in the case at bar. Thus, given the clear import of the statute and the tenor of the cases which have interpreted it, this Court declines to hold that an employer which never signed its assent to a CBA is bound to make pension contributions in accordance therewith merely because it did so voluntarily for a time." *Id.,* at 139.

Thus, after *Merrimen,* this Court cannot simply follow Plaintiff's quotation from *Kraftco* to determine that Plaintiffs' evidence is sufficient. Moreover, plaintiffs' contention that *Merrimen* relied solely on the language of the CBA in that case is nothing less than a misrepresentation of the holding of the case. The *Merrimen* court did not ignore the consequences of its decision, which "effectively forces pension funds, which are third-party beneficiaries of labor agreements, to be more vigilant as to the formalities of execution than are the parties to those agreements. However, what disparity may exist in this regard derives from the express and unmistakable terms of Congress' mandate." 861 F.2d at 139 (footnote omitted).

Since deciding *Merrimen,* however, the Sixth Circuit, relying upon ERISA, 29 U.S.C. § 1132(g), has found that the signature of an employer's officer to Interim, Participation and Trust Agreements that *referenced* a CBA constituted sufficient writing to bind the employer to the terms of that CBA. *Central States Pension Fund v. Behnke, Inc.,* 883 F.2d 454, 459 (6th Cir.1989). In that case, the employer had argued that it had orally agreed to provide benefits for a fixed time, and that it did not owe benefits after the expiration of the period covered by the oral agreement. The oral agreement should be enforced since there was no written CBA for the year in question. The court found, however, that since an oral agreement was unenforceable under ERISA, and yet the employer had evinced a clear intent to provide benefits through the Interim, Participation and Trust Agreements, the Agreements must refer to the last written CBA in effect between the employer and the union. *Id.* at 460–62.

In the case at bar, the employer has provided clear evidence of its intent to provide benefits pursuant to the CBA with Local 998 in the payroll sheets and the fringe benefit forms. There is no evidence other than Mr. Porter's statements made during his deposition of an intention to provide benefits on a voluntary basis, and there are plenty of written references to the CBA of Local 998 for the defendant employer's president to have been well aware that he was acting pursuant to that agreement. The company's actions in accordance with the CBA, particularly the vacation withdrawals, suggest that Mr. Porter shared this understanding of In–Puls' responsibilities. The fact situation differs, therefore, from *Merrimen* in crucial respects. Rather, *Behnke* controls this case. The absence of the signature on the CBA and the assertion of the denial of the contract do not therefore, by themselves, provide a genuine issue of material fact as to the employer's intention.

### *DAMAGES*

#### A. Uncollected Funds Owed

The analysis performed by the trustees' auditor has not been contested. Therefore, $30,194.14 is due. The trustees also seek collection assessments and attorney's fees.

#### B. Collection Assessments

Collection assessments are authorized by ERISA, 28 U.S.C. § 1132(g)(2)(C). In this case, the CBAs contain liquidated damages provisions, totalling to $4,304.84, Gauthier Affidavit. This amount is awarded.

## C. Interest

Interest on the unpaid funds plus collection assessments is ordered at the rate authorized by 28 U.S.C. § 1961(a) from the date that the trustees were entitled to the funds. *Sweet v. Consolidated Aluminum Corp.*, 913 F.2d 268, 270 (6th Cir.1990). Because differing amounts were due each week of work, the court recognizes that the interest calculation may be somewhat difficult. Therefore, the court shall require the parties to stipulate to an interest figure.

■ ERISA does not require this court to adopt the 12 percent rate chosen by the Trustees, and this court declines to do so because prevailing interest rates have been considerably lower, and the purpose of pre-judgment interest is to compensate for lost opportunity cost. Cf. *Sweet* at *id.*

## D. Attorney's Fees

■ In deciding to award fees under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), the Court must follow the test adopted by the Sixth Circuit in *Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985), *discussed in Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1301–1305 (6th Cir., 1991). Under this approach, the awarding of fees is in the court's discretion, and the court should consider the following factors: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

■ The court finds that attorney's fees should NOT be awarded in the present case. With regard to the first factor, bad faith has not been shown. Clear culpability is only established by the failure to pay the withholding of the vacation money from wages, and that concerns only a small part of this dispute. No evidence has been submitted as to the ability of In–Puls to pay, but the Court assumes for now that the firm can pay the

money. The Court believes that deterrence considerations are not particularly appropriate in this instance, since the legal obligations of In–Puls were ambiguous after *Merrimen* in light of the lack of an In–Puls' officer's signature on the CBA. As to the fourth factor, because the recovery is by trustees of a plan, this Court does find a common benefit from the award. Finally, since the emphasis of the written agreement requirement has been changed somewhat over time in this circuit, the court does not find that defendant's position was unsupported or greatly inferior to plaintiffs' position.

The Court will Not award attorney's fees.

## E. Final Procedure as to Interest Calculation

The court orders the submission of a stipulated figure for interest to the court file by March 1, 1993. If the parties are unable to agree, the Court will determine what the reasonable amount of interest is and will assess attorney's fees to the side that it finds was unreasonable, if either, in the stipulation negotiations.

JUDGMENT FOR PLAINTIFFS shall issue as soon as the interest figure is submitted.

SO ORDERED.

### STIPULATION TO INTEREST CALCULATION ON UNPAID CONTRIBUTIONS

In accordance with the Court's Memorandum Opinion and Order dated February 23, 1993, the parties hereto stipulate and agree for purposes of determining an amount of judgment to an interest calculation as follows:

$$\$30,194.14 \times .06 \times 18 \div 12 = \$2,717.47$$

This figure represents total interest due on unpaid contributions through February 28, 1993.

/s/ Scott Stensaas

Scott Stensaas P32751

Attorney for Plaintiffs

Dated: 2–25–93

/s/ Scott Fraim

Scott Fraim P35669

Attorney for Defendants

Dated: 3–1–93

## *JUDGMENT*

This action came on for hearing before the Court, Honorable Stewart A. Newblatt, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered;

**IT IS ORDERED AND ADJUDGED** that judgment be entered for the plaintiffs in the amount of $30,194.14, pre-judgment interest in the amount of $2,717.47 plus $4,304.84 in Collection assessments for a total judgment of $37,216.45. Post Judgment interest is at 3.21 percent.