**RESIDENTIAL REROOFERS LOCAL 30–B HEALTH AND WELFARE FUND OF PHILADELPHIA AND VICINITY, et al.**

v.

**A & B METAL AND ROOFING, INC.**

**Civil Action No. 96–CV–5063.**

United States District Court, E.D. Pennsylvania.

Aug. 28, 1997.

Sanford G. Rosenthal, Jennifer B. Liebman, Sagot, Jennings & Sigmond, Philadelphia, PA, for Plaintiffs.

David C. Onorato, Landis, Kerns and Onorato, Lansdale, PA, for Defendant.

## MEMORANDUM

JOYNER, District Judge.

### INTRODUCTION

Before the Court is Plaintiffs' Motion for Partial Summary Judgment on the issue of Defendant's liability for contributions to benefit funds. For the following reasons, summary judgment is granted.

### BACKGROUND

Defendant A & B Metal and Roofing, Inc. ("A & B") is a roofing contractor. A & B's 1990 incorporation documents identify Gary Bentz as Vice–President, Secretary, and Treasurer of the company and Robert Andalis as President. Plaintiffs are Residential Reroofers Local 30–B (the "Union"), a labor union, and various multi-employer benefit funds (the "Funds"). This action concerning Defendant's liability for contributions to plaintiff Funds pursuant to a collective bargaining agreement ("CBA") which Defendant allegedly entered into with the Union.

On December 17, 1991, Eileen Nicastro signed a CBA under the signatory heading "contractor" which included A & B's name, address, and phone number. David McBride, a Union representative, signed the CBA for the Union.

The CBA provides for employer contributions to the Funds for time worked by or paid to qualifying employees. The CBA also requires that these contributions be submitted to the Funds no later than the fifteenth day following the month in which the work is performed. The CBA contains an "Evergreen Clause" such that it is automatically

renewed every year unless terminated by one of the parties. The termination procedure requires written notice to the other party before September 30th, in which case the CBA would terminate on November 30th of that year. Remittance reports show that Defendant made contributions to the Funds regularly from February 1991 to June 1992 and from October 1993 to March 1994.[1]

In July 1994, Gary Bentz became the president of A & B. Also in July 1994, the Union sent Bentz a renewal of the CBA with an assent page for his signature. Bentz never signed this renewal assent. Bentz also never wrote to the Union to terminate the CBA. In March 1996, Bentz sent a letter to the Funds, not to the Union, indicating his intent not to be bound to the CBA and not to pay contributions. His letter also stated, "In July 1994, Eileen Nicastro stepped down from being president of A & B," and that at that time he had become president. Pl.'s Memo in Supp. of Partial Summ. J. (Pl.'s Memo) Ex.3.

Plaintiffs commenced this action on July 16, 1996 to recover alleged delinquent contributions due the Funds. Plaintiffs move for partial summary judgment on the issue of Defendant's liability for benefit fund contributions.

DISCUSSION

I. *Summary Judgment Standard*

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Whether a genuine issue as to any material fact exists is determined by whether the evidence is such that the fact finder could find reasonably in favor of the non-moving party. *See id.* at 248, 106 S.Ct. at 2510. To survive summary judgment, the non-moving party must raise more than a scintilla of evidence. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989). Further, the non-moving party can not simply rely on the assertions in its answer but must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential" to its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Summary judgment is a "useful procedure when there is no dispute about the critical facts and it serves to eliminate the expense and delay of unnecessary trials." *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 83 (3d Cir.1982).

II. *Defendant's Liability to the Funds*

Plaintiffs move for partial summary judgment on two distinct grounds: (1) Defendant's course of conduct and signed writings referencing the CBA evidenced Defendant's intent to be bound to the terms of the CBA regarding benefit fund contributions such that it is liable for contributions even absent a valid, signed CBA; (2) A valid, signed CBA under which Defendant is liable for benefit fund contributions does exist since Eileen Nicastro had actual or apparent authority to sign the 1991 CBA on behalf of A & B.

In opposition to Plaintiffs' motion, Defendant claims that material issues of fact exist as to whether or not a signed, valid, enforceable CBA exists which would require benefit contributions. Defendant argues that Eileen Nicastro had no authority, actual or apparent, to sign the CBA on behalf of A & B and that the CBA is therefore invalid. Alternatively, Defendant argues that it terminated any valid CBA that may have existed when Bentz did not sign the renewal assent form or, at the latest, when Bentz wrote the Funds in March 1996.

For purposes of clarity, we will address Plaintiffs' course of conduct argument first even though we rest our decision to grant partial summary judgment upon Plaintiffs' claim regarding Eileen Nicastro's authority.

---

1. Defendant submitted remittance reports for every month from February 1991 to January 1996. However, many of these reports show zero dollars contributed.

A. *Defendant's Liability Under a Course of Conduct Theory*

■ Plaintiffs argue that, as a matter of law, a signed CBA is not necessary for the Court to find Defendant liable for contributions to the funds. However, Plaintiffs' argument is not persuasive, and we do not find that partial summary judgment should be awarded on this basis.

■ Section 302(c)(5)(B) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 186(c)(5)(B), permits an employer to contribute to employee benefit plans provided that "a detailed basis on which payments are to be made is specified in a written agreement with the employer...." The "written agreement" requirement is met where (1) "there is a writing that clearly refers to the collective bargaining agreements" and (2) "the conduct of the defendants in paying past contributions and liquidated damages evidences an intent to be bound by the collective bargaining agreements despite a lack of written consent." *Central Pa. Teamsters Pension Fund v. Frey's Motor Express, Inc.*, No. CIV.A.93–2442, 1994 WL 2533, at *2 (E.D.Pa. 1994) (quoting *Trustees of Washington Area Carpenters' Pension & Retirement Fund v. Mergentime Corp.*, 743 F.Supp. 422, 427 (D.Md.1990)). Plaintiffs claim that the "written agreement" requirement of § 302(c)(5)(B) does not require a signed CBA.

While courts have found employers liable for benefit contributions absent a signed CBA according to this "course of conduct" theory, the writings referencing the CBA or the benefit agreements in such cases provided stronger proof of the employers' intent than does the evidence here. For example, in some cases a signed but expired CBA existed which the employers' conduct continued to follow. *See, e.g., Robbins v. Lynch*, 836 F.2d 330 (7th Cir.1988) (finding employer liable for contributions where signed, expired CBA existed and signed promises to be bound by multi-employer association agreements existed); *Composition Roofers Union Local No. 30 Welfare Trust Fund v. L.A. Kennedy, Inc.*, No. CIV.A.93–1558, 1996 WL 220975 (E.D.Pa. May 2, 1996) (finding employer liable for contributions where writings

included signed, expired CBA). Absent a prior or expired CBA, courts have applied the "course of conduct" theory where there existed other specific promises, assents, agreements, memorandums or agreement or similar formal writings referencing the CBA or benefit agreements. *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454 (6th Cir.1989) (finding employer liable for contributions where employer had signed certification of CBA). In our case, no prior valid CBA or other signed agreement, letter, promise, or assent exists.

Defendant's check and contributions do create a course of conduct suggesting intent to comply with the terms of the CBA, but the only "writings" referencing the CBA are the remittance reports initially signed by Eileen Nicastro, whom Bentz claims had no authority. *See* Bentz Decl. ¶ 5. The remittance reports do reference the terms of the CBA as to the Funds, but (assuming Eileen Nicastro had no actual or apparent authority to sign the reports for A & B) they are not signed by an officer of the Defendant. Also, unlike the writings in the cited cases, the remittance reports do not specifically assent to, agree with, or promise to uphold the CBA.

Plaintiff points us to *Trustees of Flint Mich. Laborers' Pension v. In–Puls Constr. Co.*, 835 F.Supp. 972 (E.D.Mich.1993), in which the court applied the "course of conduct" theory and found an employer liable for contributions where no prior CBA or other signed agreements, assents, or promises existed. The writings in *In–Puls* consisted of payroll reports signed by the employer's president, remittance reports signed by an authorized agent, and a CBA on which the employer had written the company name but had not signed. *See id.* at 973. Unlike our case, in which the only writings are the check and the remittance reports, the remittance reports in *In–Puls* contained the following statement: "By filing this form the undersigned agrees to the terms of payment as set forth in the current Collective Bargaining Agreement and Trust Agreement..." *Id.* Also, the payroll reports in *In–Puls* "plainly refer[red] to contributions to the fringe benefit fund ." *Id.* In our case,

no such specific language exists on the remittance reports, and Plaintiffs have not identified payroll reports referencing the CBA. Finally, assuming Eileen Nicastro lacked authority to act on behalf on A & B, the writings were not signed by an authorized agent or officer. Thus, we do not agree with Plaintiffs that Defendant's course of conduct and signed writings establish liability for contributions to the Funds.

## B. *Eileen Nicastro's Authority and the Validity of the CBA*

▮ Plaintiffs argue that the CBA between the Union and Defendant is valid and enforceable as a result of Eileen Nicastro's actual or apparent authority. Moreover, an agent's authority can be ratified by the acts of her principal. *See IRS v. Gaster,* 42 F.3d 787, 793 (3d Cir.1994). *See also* Restatement (Second) of Agency § 100 cmt. a (1958) ("The affirmance of the act of an unauthorized person by the purported principal...has the same effect as if such person had been originally authorized.") Though we find summary judgment inappropriate under an actual authority theory, we find that Ms. Nicastro did have apparent authority and that Defendant ratified Ms. Nicastro's actions such that Defendant became bound by the terms of the CBA.

▮ Under Pennsylvania law, "an agent can bind his principal if the agent has actual or apparent authority." *Richardson v. John F. Kennedy Mem'l Hosp.,* 838 F.Supp. 979, 985 (E.D.Pa.1993) (citing *Volunteer Fire Co. v. Hilltop Oil Co.,* 412 Pa.Super. 140, 602 A.2d 1348, 1351–52 (1992)). Actual authority is "the authority expressly granted to an agent by his principal." *Id.* In this case, Ms. Nicastro signed the CBA on behalf of A & B Metal on June 17, 1991 and also signed a check from A & B for $1,000 to be deposited in the Funds' escrow account. Plaintiffs claim that at the time of the signing, Gary Bentz requested that Ms. Nicastro sign the CBA. Pl.'s Reply to Def.'s Memo in Opp'n to Partial Summ. J. at 4 ("Pl.'s Reply"); Nicastro Decl. ¶ 2; McBride Dep. at 10. However, Defendant claims that Eileen Nicastro was never authorized to sign the CBA on behalf of A & B, and Gary Bentz specifically denies

ever having authorized Ms. Nicastro to do so. Def.'s Memo in Opp'n to Partial Summ. J. at 2 (Def.s Memo); Bentz Decl. ¶ 5. There are, therefore, disputed factual issues precluding partial summary judgment on these grounds.

Plaintiffs argue in the alternative that the CBA is valid and enforceable under the doctrine of apparent authority. "Apparent authority exists where the principal, *by words or conduct,* leads people with whom the alleged agent deals to believe that the principal has granted the agent the authority he purports to exercise." *Id.* (emphasis added) This court in *Constitution Bank v. DiMarco,* 836 F.Supp. 304, 307 (E.D.Pa.1993), *aff'd mem.,* 27 F.3d 556 (3d Cir.1994), discussing apparent authority, noted that "the intent to be bound to a third party flows from the principal's conduct and not from that of the agent." *See also AT & T Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421, 1439–40 (3d Cir.1994) (noting that doctrine of apparent authority is applicable to both agents and non-agents who are reasonably believed by third parties to have agency relationship with principal). Furthermore, "without actual knowledge of the agent's authority to bind the principal, the third party must exercise only reasonable diligence to ascertain the agent's authority." *Id.* (citing *Bolus v. United Penn Bank,* 363 Pa.Super. 247, 525 A.2d 1215, 1222 (1987)).

Here, Plaintiffs claim that Ms. Nicastro acted with apparent authority where, in the presence of Gary Bentz, she (1) signed the CBA under the signatory heading "contractor" which listed the contractor as "A & B Metal and Roofing" and (2) signed the A & B check for $1,000. Pl.'s Reply at 7; Nicastro Decl. ¶ 4; McBride Dep. at 9. Plaintiffs allege that the Union therefore believed that Bentz, then vice-president, secretary, and treasurer of A & B, approved of Ms. Nicastro's signing. While Bentz denies that he ever authorized Ms. Nicastro to sign on behalf of A & B, Bentz does not deny attending the signing, and Defendant provides no evidence that Bentz was not present at the signing. In fact, Defendant does not address this aspect of Plaintiffs' claim. Defendant's only contention regarding Ms. Nicastro's apparent authority is that she could not have

acted under apparent authority since the CBA did not indicate that she signed as an officer of the Defendant. Def's Memo at 2. Defendant cites no decision of any court which defines apparent authority in this way. Further, this contention conflicts with the Pennsylvania and Third Circuit cases cited above that clearly define apparent authority as based upon the words, conduct or representations of the principal.

Even if Bentz were not at the signing (an issue not disputed by the Defendant), Defendant's actions after Ms. Nicastro signed the CBA ratified her authority such that Defendant became bound to the agreement. "Consent sufficient to establish an agency relationship exists not only where there is prior authorization, but also where a principal ratifies acts done on her behalf after the fact." *Gaster*, 42 F.3d at 793. Furthermore, the concept of ratification in agency law binds a principal to an unauthorized agent's acts if the principal knows of the acts but fails to take affirmative steps to disavow them. *See United States v. One 1973 Rolls Royce*, 43 F.3d 794, 818 n. 26 (3d Cir.1994).

A & B not only failed to repudiate Ms. Nicastro's signing of the CBA, but also took affirmative steps which ratified her signing the CBA. A & B failed to cancel the check for $1,000 signed by Ms. Nicastro and made out to the Funds' escrow account, and A & B made contributions to the Funds according to the specific provisions of the CBA totaling well over $1,000. Additionally, A & B submitted reports to the Funds according to the provisions of the CBA. These reports were signed "Eileen Nicastro, Pres." for the four months following the signing of the CBA and "Eileen Nicastro" for forty-three more months.

In *SEI Corp. v. Norton & Co.*, 631 F.Supp. 497 (E.D.Pa.1986), the court found that a similar failure to repudiate an unauthorized action amounted to ratification of the action. In *SEI Corp.*, the defendant's authorized attorney discovered, well before trial, that an unauthorized attorney had accepted service of the complaint and filed an answer for the defendant. *Id.* at 501–02. When the defendant's authorized attorney waited until three days into the trial to repudiate the unauthorized attorney's representations, the court found that his failure to notify the court and the plaintiff of the unauthorized attorney's representations amounted to ratification of the representations. *Id.* at 502–03.

In the present case, Defendant did nothing to repudiate Ms. Nicastro's signing the CBA. Defendant allowed the $1,000 check to clear, made contributions to the fund according to the CBA, and submitted remittance reports according to the CBA. In fact, Defendant's first act in repudiating the validity of the 1991 CBA did not come until March 1996 when Bentz wrote, not to the Union, but to the Funds. Even this letter, though, did not repudiate the validity of the CBA or Ms. Nicastro's authority, but rather stated A & B' intention not to be "union" anymore. Pl.'s Memo Ex. 3. Indeed, this letter explicitly referred to Ms. Nicastro as the former president of A & B, further ratifying her signing the CBA by suggesting that she was president at one time.[2]

The Union and the Funds, therefore, reasonably believed that the CBA signed by Ms. Nicastro was a valid and enforceable agreement, while A & B's failure to repudiate Ms. Nicastro's signing the CBA and A & B's actions in accordance with the terms of the CBA ratified Ms. Nicastro's authority. No reasonable finder of fact could find otherwise. Thus, having failed to meet its burden of establishing that a material issue of fact exists, *see Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53, Defendant's opposition to partial summary judgment on the basis of Ms. Nicastro's apparent or ratified authority fails.

## C. *Defendant's Termination of the CBA*

■ Defendant contends that even if the CBA is valid and enforceable, it was termi-

**2.** However, Bentz claims in his deposition that he only wrote that Eileen Nicastro stepped down from being president because of what the Funds' manager told him, repudiating the suggestion that Ms. Nicastro was ever president. Bentz Dep. at 103. Bentz's deposition, though, also contains statements suggesting that Ms. Nicastro was the president. *See* Bentz Dep. at 102. Nonetheless, Bentz's letter suggesting that Ms. Nicastro had stepped down from being president acts to ratify her authority regardless of whether she was ever president.

nated by Bentz's failure to sign the renewal assent in 1994, or, in the alternative, by Bentz's March 1996 letter to the Funds. We find Defendant's argument to be without merit for two reasons. First, Bentz's actions did not constitute termination of the CBA according to its explicit terms. Second, the Third Circuit only recognizes three distinct defenses to actions by benefit funds for employer contributions, and contract termination is not among them. *See Agathos v. Starlite Motel,* 977 F.2d 1500, 1505 (3d Cir. 1992).

1. *Defendant's Attempted Termination of the CBA*

Defendant failed to terminate the CBA. The CBA contained an "Evergreen Clause" which stated that renewal was automatic barring "written notice duly given to the other party..." CBA at 44. Defendant cites no case law to suggest that Bentz's failure to sign the renewal assent form constitutes proper termination merely because Bentz intended so. Furthermore, Bentz sent the March 1994 letter to the Funds, not the Union, even though the CBA required written notice to the other "party." The Funds were not a party to the CBA. *See generally Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960) (holding that absent specific language to the contrary, benefit funds are separate from union signatories to CBA's and that employers' obligations to funds are separate from obligations to unions under CBA's).

Courts consistently conclude that contracts with "Evergreen Clauses" requiring written notice are not terminated absent compliance with the terms of the contract. *See, e.g., Local 257, Int'l Bhd. of Elec. Workers v. Grimm,* 786 F.2d 342, 345–46 (8th Cir.1986) (holding that noncompliance with terms of agreement did not terminate agreement, failure to comply with date requirement in termination procedure rendered termination in-

effective, and letter between non-party and party could not terminate agreement); *Central States, Southeast, and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.,* 854 F.2d 1074, 1079–80 (7th Cir.1988) (holding that oral termination was invalid where CBA called for written termination and that termination was effected only when written notice was given to the funds and the union according to the specific date requirements of the CBA); *In re Baldanza Bakery, Inc.,* 149 B.R. 370, 371 (Bankr.D.N.J.1992) (stating that CBA which included "Evergreen Clause" and required written notice to terminate did not terminate absent such written notice). Having failed to comply with the explicit requirements set forth in the CBA, Defendant's efforts to terminate the agreement were ineffective.

2. *Alleging Contract Termination as a Defense*

The Funds in this case are third-party beneficiaries to the CBA between the Union and A & B, and Section 515 of ERISA, 29 U.S.C. § 1145 (1988), limits the defenses available to a defendant employer against third-party beneficiary benefit funds seeking contributions. *See Agathos,* 977 F.2d at 1505. The Third Circuit recognizes only three defenses that an employer may assert against employee benefit funds seeking contributions: (1) The fund contributions themselves are illegal; (2) The collective bargaining agreement is void *ab initio;* (3) The employees have decertified the union as its bargaining representative. *See id.*[3]

Here, Defendant does not maintain that the contributions are illegal or that its employees have decertified the union. Defendant instead based its defense upon an alleged contract termination. The defense of termination, though, is one of voidability of the contract, not that the contract is void *ab initio. See id.* Although Defendant does not address this issue of limited defenses, it

---

**3.** Section 515 is designed to effectuate employer contributions to multi-employer benefit funds. *See Agathos,* 977 F.2d at 1505. When Congress enacted Section 515 in 1980, it intended to reduce the cost to funds of employer delinquency by allowing funds to avoid the difficult and costly legal recourse then necessary to recover contri-

butions. *See id.;* 126 Cong. Rec. 23039 (1980) (remarks of Rep. Thompson). Pursuant to these goals, "[c]ourts of appeals have interpreted § 515 as precluding employers from raising a variety of contract defense as a means of avoiding the obligation to contribute to employee benefit plans." *Agathos,* 977 F.2d at 1505.

is instructive to examine the differences between a contract's being void *ab initio*, "such as where there is fraud in the execution of the agreement" and a contract's being voidable, "as in the case of fraudulent inducement." *Id.* While the former is a valid defense in a case such as this, the latter is not. *See id.* Fraud in the execution arises when a party enters an agreement "with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." *Connors v. Fawn Mining Corp.*, 30 F.3d 483, 490 (3d Cir.1994). In our case no such situation exists; in fact, Defendant's claim here is that it terminated any valid agreement that may have existed. Clearly, Defendant is not claiming a defense of fraud in the execution of the contract where it claims that it terminated the CBA. Third Circuit law prevents Defendant from claiming termination of the contract in the alternative to its failed claim that Eileen Nicastro lacked authority to sign the CBA. *See also Carpenters Health & Welfare Trust v. Bla–Delco Constr., Inc.*, 8 F.3d 1365, 1369 (9th Cir.1993) (holding that contract termination is defense that contract is voidable, not void, and that such defense is not available against third-party beneficiary benefit fund under § 515 of ERISA). Defendant, therefore, may not allege termination of the CBA as a defense in this action.

CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' Motion for Partial Summary Judgment as to the issue of Defendant's liability for benefit fund contributions.