**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MASTERS, MATES AND PILOTS PENSION
PLAN, an Employee Pension Benefit
Plan; TIMOTHY A. BROWN; RICHARD
CONNELLY; ROBERT DARLEY; FLORIN
DENTE; JAMES HOPKINS; PAUL
NIELSON, fiduciaries of the Masters,

Mates and Pilots Pension Plan,
Plaintiffs-Appellees,

No. 97-2671

v.

ROBERT J. LOWEN,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-94-4006-WMN)

Argued: June 2, 1998

Decided: September 9, 1998

Before WILKINS and LUTTIG, Circuit Judges, and FABER,
United States District Judge for the Southern District
of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Charles B. Wayne, SCHWALB, DONNENFELD & SIL-
BERT, P.C., Washington, D.C., for Appellant. Ronald Glenn Dean,
Pacific Palisades, California, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

From 1958 through 1960, Robert Lowen ("Lowen") was employed by States Marine Lines ("SML") as an owner's representative, working shoreside in Korea. At the time, the collective bargaining agreement between SML and Master, Mates & Pilots ("MMP") required pension contributions for Licensed Deck Officers and Masters, but not owners' representatives. In 1961, according to Lowen, SML "begged" him to return to Korea. Lowen states that he agreed to the request, with the following three conditions: (1) that he not be left stranded in Korea; (2) that after his second tour there, he would be given a ship to sail; and (3) that SML would make pension contributions for him, for both past and future work in Korea. There was no documentation of this agreement, nor are there any witnesses, other than Lowen, with first-hand knowledge of the agreement.

Ten years later, in 1971, Lowen accepted a temporary assignment with the union, MMP. At that time, Lowen discovered that SML had failed to make the agreed-upon contribution pursuant to his 1961 agreement. The union president, Captain Thomas O'Callahan, contacted the president of SML to inquire into the matter. Subsequently, a check for $2,761.30 was sent to the union pension plan ("the Plan"), with a stub indicating that the payment was for"P&W [Pension and Welfare] Contributions" for "Captain Robert Lowen." Additionally, SML sent a document which falsely represented that Lowen had been employed aboard two ships, the "Cotton State" and the "Palmetto State," during the 1958-1961 period that he was actually working shoreside in Korea.

Lowen retired in 1993 and subsequently submitted his application for pension benefits. Lowen's application was administratively approved, with the contribution from SML included in the calculation of his pension benefits. Lowen received a lump sum distribution in

2

the amount of $903,598.24, subject to ratification by the Plan's trustees. The trustees ultimately decided not to ratify the distribution and requested that Lowen return $98,216.69 which the trustees attributed to the 1971 SML contribution.

Lowen refused the trustees' request, and the trustees filed suit in the United States District Court for the District of Maryland. Following discovery, Lowen filed a motion for leave to file various counterclaims under ERISA, including allegations of the breach of loyalty and the breach of fiduciary duties. The trustees moved for summary judgment, contending that the Plan could not legally allow Lowen to retain any amount of the distribution based on the 1971 SML contribution because that contribution was violative of§ 302 of the Taft-Hartley Act of 1947, 29 U.S.C. § 186. By Order entered on October 28, 1997, the district court granted the trustees' motion for summary judgment and denied Lowen's motion for leave to file a counterclaim.

I

When reviewing a district court's determination that summary judgment is appropriate, we apply a de novo standard of review, see Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988), and view the facts in the light most favorable to the non-moving party, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A summary judgment movant must demonstrate that "there is no genuine issue as to any material fact and that[it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson , 477 U.S. at 250.

The trustees of an ERISA qualified plan have the discretionary authority to interpret and apply the plan terms. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989); Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co., 32 F.3d 120 (4th Cir. 1994). Accordingly, a decision made by such a trustee is reviewed only for abuse of discretion. However, special circumstances, including allegations of conflict of interest and breaches of the duty of loyalty, require a court to review decisions of trustees de novo. In light of Lowen's claims that

3

the trustees acted under a conflict of interest, this court has reviewed the decision of the trustees de novo.[1]

II

Section 302 of the Taft-Hartley Act generally prohibits payments from employers to employee representatives, including trustees administering a pension trust fund. Section 302 further precludes the receipt of such payments by employee representatives. The statute was passed "to curb the abuses . . . which seemed to be inherent in funds created and maintained by contributions exacted from employers but which were administered by union officials without any obligation to account to the contributors or to the union membership." Moglia v. Geoghegan, 403 F.2d 110 (2d Cir. 1968).

Section 302 does, however, provide a limited exception to the general prohibition against employer payments. Subsection (c)(5)(B) permits employers to make payments to trust funds established for the benefit of employees. This limited exception requires that "the detailed basis on which such payments are to be made[must be] specified in a written agreement with the employer." 29 U.S.C. § 186(c)(5)(B). As explained in Moglia, failure to abide by the writing requirement undermines the employer's attempted contribution:

> [I]n the case of a legally established union pension trust fund, the only employer contributions which may be accepted by the trustees administering the fund are those contributions from employers who have a written agreement with the union as required by subsection 302(c)(5)(B). Absent the written agreement, there is no valid Section 302 trust as to those employer contributions; the parties making and accepting such contributions are violating Section 302, and the intended beneficiary of the illegal employer contri-

---

[1] Lowen's proposed counterclaims alleged that the trustees had breached their fiduciary duties owed to the Plan because they acted out of animus toward Lowen in filing this action to recover the illegal distributions. In light of our decision regarding the propriety of summary judgment in favor of the trustees, we agree with the district court that there is no basis for Lowen's proposed counterclaims.

> butions has no legal right under Section 302 to the benefits normally derived from employer contributions to the trust fund.

403 F.2d at 116 (emphasis added, citations omitted).

We agree with the district court's finding that the SML contribution was illegal because it was not made pursuant to a "written agreement" and, thus, Lowen has no right to benefits derived from that contribution. Although the writing requirement is not formalistic,[2] Lowen cannot establish any written agreement that satisfies section 302. Lowen points to three possible documents: (1) the plan documents in force in 1971 when the contributions were made; (2) documents generated by SML in 1971 explaining the contributions; and (3) the collective bargaining agreement in force in 1971, as well as the agreements applicable to the period from 1958-1961. Although any of the above documents theoretically may satisfy the writing requirement of section 302, none are adequate in the specific context of this action.

Regarding the Plan document in force at the time Lowen allegedly made the agreement and performed the services, he contends that the contribution was permissible because it was not specifically excluded under the Plan documents or the CBA. As the district court found, this argument is incredulous and illogical:

> [Lowen's] reasoning that a contribution can be made pursu-

---

**2** Writings that have been held sufficient to satisfy section 302 include: (1) payroll sheets and fringe benefit forms, Trustees of the Flint Michigan Laborers' Pension Fund v. In-Puls Constr. Co. , 835 F. Supp. 972 (E.D. Mich. 1993); (2) remittance reports detailing the contributions and the employees to be credited, Crouch v. Mo-Kan Iron Workers Welfare Fund, 740 F.2d 805 (10th Cir. 1984); (3) a letter to employees adopting the benefits and hourly wage terms of a collective bargaining agreement, Florida West Coast Operating Eng'rs Local 925 Welfare Fund v. Sunbelt Sales & Rentals, Inc., 732 F. Supp. 1135, aff'd, 932 F.2d 977 (11th Cir. 1991); and (4) an expired collective bargaining agreement, Denver Metro. Ass'n of Plumbing, Heating, Cooling Contractors v. Journeyman Plumbers & Gas Fitters Local No. 3, 586 F.2d 1367 (10th Cir. 1978).

5

ant to the CBA as long as a contribution was not expressly prohibited under the CBA would completely eviscerate the requirement under § 302(c)(5)(B) that contributions be made only pursuant to a detailed written agreement. Under [Lowen's] theory, anyone could send a contribution to the Plan.

(J.A. at 96.)

As for Lowen's reliance on subsequent documents, his argument has a gaping hole. The key point, which Lowen glosses over, involves the sequence of events in this case. At the time Lowen performed the work for which the disputed contribution was made, there was no written agreement of any kind which permitted such action. Lowen cannot, and does not, refute this. By the time the contribution was actually made, the Plan documents had been amended to specifically cover the disputed contribution. The district court rejected Lowen's arguments because Lowen failed to prove that the amendments to the Plan documents "were to be given retroactive effect to convert employment that was non-covered at the time it was accomplished into covered employment." (J.A. at 96.)

Lowen must establish that either the contract or section 302 itself permits later agreements in support of contributions made for prior work. As to the former, he never makes such an argument, nor do the Plan documents speak to retroactivity at all. Moreover, there is no need for interpretation of the Plan documents, as amended, because there is no ambiguity regarding retroactivity. With regard to the statute, the trustees suggest that section 302 contemplates a prior written agreement, not a memorialization of a prior oral understanding. The court agrees with this position. If a simple memorialization of a prior agreement was sufficient, the writing requirement set forth in section 302 would have no teeth. Parties could readily undermine the purposes of the Taft-Hartley Act, namely "prevent[ing] employers from bribing union officers and union officers from extorting money from employers . . . [and] limit[ing] the discretion of unions in administering such funds, lest union officers use the discretion to punish their enemies and reward their friends." Tyson v. Int'l Bhd. of Teamsters, Local 710 Pension Fund, 811 F.2d at 1148-49.

6

This conclusion is supported by use of the future tense in 29 U.S.C. § 186(c)(5)(B). That statute requires that "the detailed basis on which such payments are to be made [shall be] specified in a written agreement with the employer. . . ." The language of the statute clearly contemplates payments made subsequent to the writing setting forth the detailed basis on which they are to be made; under the plain meaning of the statute, the writing must come first.

We conclude, therefore, that neither the statute nor the amendments to the Plan documents authorizes a contribution based on the sequence of events presented in this case. Consequently, the contributions were not made in compliance with section 302 (c)(5)(B).

III

Section 302 of the Taft-Hartley Act requires a written agreement in support of employer contributions to employee benefit plans and funds. At the time of the agreement between Lowen and his employer, SML, there was no writing authorizing the arrangement. Thus, the contributions made by SML violated section 302 and Lowen must account for the benefits derived from the illegal contribution. Accordingly, the judgment of the district court is

AFFIRMED.

7