**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3872
_____

NEW JERSEY REGIONAL COUNCIL OF CARPENTERS; NEW JERSEY
CARPENTERS FUNDS and the TRUSTEES THEREOF,
Appellants


v.

JAYEFF CONSTRUCTION CORPORATION
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3:11-cv-00903)
District Judge: Hon. Joel A. Pisano


_____

Submitted under Third Circuit LAR 34.1(a)
September 10, 2012

Before: SMITH, CHAGARES and ALDISERT, Circuit Judges.

(Filed: September 12, 2012 )


_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

The New Jersey Regional Council of Carpenters, the New Jersey Carpenters

Funds and the Trustees thereof (collectively, "the Funds") appeal an order from the

United States District Court for the District of New Jersey, which denied the Funds'

motion to confirm an arbitration award and granted Appellee's motion to vacate the same

award. Appellants contend that the District Court erred by: (1) usurping the role of the

arbitrator by interpreting the terms of the collective bargaining agreement ("CBA") and

(2) holding that Appellee was not bound by the CBA through its execution of remittance

reports. For the reasons that follow, we will affirm the District Court's order.

I.

Because we write primarily for the parties, who are familiar with the facts and the

proceedings in the District Court, we will revisit them only briefly.

Jayeff Construction Corporation ("Jayeff") is a commercial construction

contracting company that hires subcontractors to work on its projects. Jayeff utilizes an

open-shop work force, meaning it does not require employees to join or financially

support a union as a condition to employment, and Jayeff has not entered into a statewide

CBA with the Funds. It has, however, employed members of the Carpenters' Union and

has, at individual employees' requests, remitted payment of their benefits to the Funds so

that the employees could maintain their union benefits status. Between 2003 and 2009,

Jayeff voluntarily remitted fringe benefits for five employees who were members of the

Carpenters' Union. None of these individuals performed carpentry work for Jayeff but

were, instead, employed in managerial positions.

Jayeff used the remittance forms required by the Funds, which are standard fill-in-

the-blank forms. Each form listed the names of the employees for whom amounts were

being remitted. The forms also contained the following statement in fine print:

> The Employer hereby acknowledges his or its agreement to the Collective
> Bargaining Agreement which requires the payment of the fringe benefits
> forwarded herewith. The Employer further agrees to the Agreements and
> Declarations of Trust governing the New Jersey Carpenters' Fringe

2

> Benefits Funds. Both Collective Bargaining Agreement and the Agreements and Declarations of Trust are hereby incorporated by reference and the Employer agrees to abide by said agreements.

App. 00082.[1] The remittance forms were signed and submitted by Jayeff's personnel manager, Eloise DiGuglielmo, and not by the president of Jayeff.

In June 2003, the Funds instigated a payroll compliance audit of Jayeff for the period beginning January 1, 2009, and ending March 31, 2010. On August 16, 2010, the auditor issued a report stating that Jayeff should have remitted payments for additional non-union employees. As a result, on December 8, 2010, the Funds notified Jayeff that a delinquency in the amount of $246,181.67 had been assessed against it. Jayeff took the position that, because it was not a signatory to the CBA with the Funds, no additional payment was due. Thereafter, the Funds communicated their intent to arbitrate the dispute. On December 21, 2010, Jayeff informed the Funds that it would not participate in the arbitration proceedings and, moreover, could not be compelled to participate in the proceedings because it had never signed the CBA or any arbitration agreement.

The arbitrator conducted the proceedings without Jayeff on December 30, 2010. The arbitrator determined that Jayeff was bound to the CBA with the New Jersey Council of Carpenters and issued an order on January 3, 2011, directing Jayeff to pay $392,178.71 to the Funds. After Jayeff failed to pay the amounts awarded, the Funds filed a motion in the District Court for the District of New Jersey requesting that the District Court confirm the award. Jayeff filed a cross-motion to vacate the award. On October 11, 2011, the District Court issued an order denying the Funds' motion to confirm the award and granted Jayeff's motion to vacate. The Funds timely appealed.

---

[1] The parties separated the page numbers of the Appendix into two groups: pages 1-14 in Volume I and pages 1-157 in Volume II. We have combined the volumes to provide one, continuous pagination: App. 00001-00171.

3

## II.

The District Court had jurisdiction under § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) and § 520 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. We have jurisdiction pursuant to 9 U.S.C. § 16(a). We exercise plenary review over the District Court's legal conclusions concerning the applicability and scope of an arbitration agreement. See Harris v. Green Tree Fin. Corp., 183 F.3d 173, 176 (3d Cir. 1999) (citing Pritzker v. Merrill Lynch, 7 F.3d 1110, 1113 (3d Cir. 1993)). "Despite the liberal policy in favor of enforcing arbitration agreements . . . , a party cannot be forced to arbitrate unless 'that party has entered into a written agreement to arbitrate that covers the dispute.'" U.S. Small Bus. Admin. v. Chimicles, 447 F.3d 207, 209 (3d Cir. 2006) (quoting Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 440 (3d Cir. 1999)).

## III.

The Funds first contend that it was error for the District Court to vacate the arbitration award because the Court impermissibly usurped the role of the arbitrator by interpreting the terms of the CBA. Jayeff, however, is not challenging the validity of the CBA nor the meaning of any of its provisions. Rather, the issue is whether a contract to arbitrate was ever entered into by the parties. In such a case, the court—not the arbitrator—has the power to adjudicate the issue. See Buckeye Check Cashing v. Cardegna, 546 U.S. 440, 444 n.1 (2006).

The Federal Arbitration Act ("FAA") creates a strong presumption in favor of enforcing arbitration awards. See Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 241 (3d Cir. 2005). Pursuant to the FAA, a district court may vacate an arbitration award only under a limited number of circumstances, including:

4

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987) (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)). Thus, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Misco, 484 U.S. at 38.

It is well-settled, however, that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Techs. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986).

IV.

Because courts—not arbitrators—must determine whether the parties ever agreed to arbitrate, we must now analyze whether the District Court erred by vacating the award after finding that Jayeff did not intend to enter into the CBA. To determine whether a dispute is arbitrable, "a court must address two issues: (1) whether the parties formed an agreement to arbitrate; and (2) whether the dispute in question falls within the scope of

5

that agreement." Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 202 (3d Cir. 2001) (citation omitted); see also Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 54-55 (3d Cir. 2001).

It is undisputed that Jayeff was not a signatory to the CBA. The lack of a signed CBA does not, however, end our inquiry. Although, "[o]rdinarily, binding a non-signatory to a CBA runs afoul of the fundamental premise that 'a party cannot be required to submit to arbitration any dispute which he has not agreed [to so] submit,'" Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Custom Air Sys., Inc., 357 F.3d 266, 268 (2d Cir. 2004) (alteration in original) (quoting Warrior & Gulf Navigation, 363 U.S. at 582), "'a collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound,' . . . rather '[a]ll that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement,'" Bricklayers Local 21 of Ill. Apprenticeship & Training Program v. Banner Restoration, Inc., 385 F.3d 761, 766 (7th Cir. 2004) (quoting Gariup v. Birchler Ceiling & Interior Co., 777 F.2d 370, 373 (7th Cir. 1985)). To determine whether a non-signatory may be bound by a CBA, a court must examine whether there is: (1) a writing that clearly refers to the CBA and (2) conduct of the defendant that "evidences an intent to be bound by the [CBA] despite a lack of written consent." Residential Reroofers Local 30-B Health & Welfare Fund v. A & B Metal & Roofing, Inc., 976 F. Supp. 341, 344 (E.D. Pa. 1997) (citation omitted).

The Funds contend that the parties formed an agreement to be bound by the CBA when Jayeff executed the remittance forms.[2] The District Court found the language in the

_____

[2] Section 302 of the LMRA, 29 U.S.C. § 186, prohibits payments by employers to labor organizations. The "written agreement requirement," however, operates as an exception, making payments to an employee benefit plan lawful where the payments are made pursuant to a written agreement. Therefore, to legally provide payments to the Funds,

6

forms to be "ambiguous," adding that "the extent to which the clause purports to bind the employer is unclear." App. 00008. The District Court went on to hold that the surrounding context "clearly shows that Jayeff had no intent to be bound to the entire CBA as to all of its employees, and that it was reasonable for Jayeff to believe that it was not so bound merely by submitting the standard remittance forms." Id.

We conclude that the District Court did not err in finding that Jayeff's conduct did not indicate an intent to be bound by the CBA. The remittance forms were expressly limited to "payment of fringe benefits forwarded herewith" for the five designated employees who requested the contributions. App. 00082. The Funds drafted the remittance forms to permit payment to the Funds, in accordance with the LMRA, not only by parties who were signatories to the CBA but also by parties like Jayeff, who were only contributing for certain employees. There is no precedent to support the Funds' position that an employer that has not signed a CBA can nevertheless be bound by all of the provisions of the CBA solely from signing remittance forms. Although a signed remittance forms is entitled to some weight, it is but one factor that must be examined in analyzing a defendant's conduct; the form, alone, is not enough to bind a non-signatory employer to a CBA. See Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp., 258 F.3d 645, 650 (7th Cir. 2001) ("[T]he monthly remittance reports accompanying these payments contained a declaration signed by the defendant . . . . Boilerplate it was, but it was entitled to *some* weight." (citation omitted)); see also Del Turco v. Speedwell Design, 623 F. Supp. 2d 319, 346 (E.D.N.Y. 2009) (concluding that

---

Jayeff must have executed a written agreement detailing the basis for the payments. Here, the remittance forms satisfy the written agreement requirement. See Moriarty v. Larry G. Lewis Funeral Directors Ltd., 150 F.3d 773, 775 (7th Cir. 1998). However, the express language in § 302(c)(5)(B) is silent as to whether the act of making payments pursuant to the written agreement automatically binds the employer to the CBA.

7

the funds could seek contributions from the employer based on the existence of a signed CBA *as well as* remittance reports).

Not only are the remittance forms, by themselves, not enough to bind Jayeff to the CBA, but moreover its conduct does not evidence an intent to be bound by the CBA: Jayeff never signed the CBA; it contributed to the funds on behalf of five individuals only after those individuals requested that it do so; and all other individuals employed by Jayeff were non-union employees. See Firesheets v. A.G. Bldg. Specialists, Inc., 134 F.3d 729, 731 (5th Cir. 1998) (concluding that employer's conduct in hiring nonunion carpenters, setting wages and making contributions to a trust fund "only for those employees who asked for contributions" was inconsistent with an intent to be bound by the CBA).

Even looking at the Funds' interaction (or lack thereof) with Jayeff, there is no evidence that Funds believed Jayeff was bound by the CBA: for seven years, until the accounting in 2010, the Funds never attempted to enforce any of the numerous provisions of the CBA against Jayeff. And even when the Funds tried to enforce the CBA's arbitration provision, Jayeff not only contested the arbitrator's jurisdiction prior to the arbitration proceedings, but it also refused to appear before the arbitrator. See Bricklayers Local 21, 385 F.3d at 767-768 (concluding employer was bound by the CBA after examining numerous factors including evidence that the employer "took no action to challenge jurisdiction after the Joint Arbitration Board found it guilty of labor violation charges under the CBA").

Based on the record, we conclude that the District Court did not err when it found that Jayeff's conduct did not indicate an intent to be bound by the CBA. We therefore reject the Funds' position and will affirm the District Court's order vacating the award.

\* \* \* \* \*

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be AFFIRMED.